JOHNSTON v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 27, 1907.)

No. 1,391.

**1. ASSAULT—EVIDENCE—PERTINENCY TO ISSUES.**

On the trial of a defendant for assault with a dangerous weapon, where it was shown that he went upon a mining claim in the peaceable possession of a lessee, and, on being ordered off, threatened such lessee with a revolver, evidence offered to show that a third person owned an interest in the claim, and that such ownership had been recognized by the lessee, who had acknowledged the right of such person to have a representative on the claim, was properly excluded as having no tendency in any event to justify the assault or to establish a defense, especially where defendant made no claim to represent such person, who already had a representative on the claim with the lessee's consent.

**2. SAME—TRIAL—INSTRUCTIONS.**

The charge of the court in a prosecution for assault with a dangerous weapon considered, and, taken as a whole, *held* free from error.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Assault and Battery, §§ 142–500.]

**3. CRIMINAL LAW—TRIAL—REMARKS BY COUNSEL.**

The use of language by counsel calculated to prejudice a defendant in a criminal case and not justified by the evidence is improper and, censurable and should be discontinued by the court, but invective based on the evidence and inferences legitimately to be drawn therefrom is not inhibited, and it is usually within the discretion of the trial court to determine whether or not the limits of professional propriety have been exceeded.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 1663, 1669, 1670.]

**4. SAME—REVIEW BY APPELLATE COURT—INSTRUCTIONS.**

Where the record in the appellate court does not contain the whole charge of the trial court, it will be presumed that it properly charged upon every branch of the case and that further instructions were given to correctly modify erroneous instructions shown by the record, if it is clear that they could have been so corrected.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Criminal Law, § 3032.]

Ross, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Second Division of the District of Alaska.

The plaintiff in error was convicted of the crime of assault with a dangerous weapon, under the provisions of section 24 of the Penal Code of Alaska. The assault was alleged to have been committed upon the prosecuting witness,

F. H. Waskey, with a revolver. The facts shown on the trial were as follows: On April 24, 1906, Waskey was residing on a mining claim near Nome, in the District of Alaska, and was mining upon an adjacent claim known as the "Three Star Fraction." He was operating under a lease, but the terms of the lease and the name of the lessor or lessors were not disclosed upon the trial. On the evening of that day Waskey saw the plaintiff in error, together with one Cummings, enter upon the Three Star Fraction. After he had exchanged friendly greetings with the plaintiff in error, the latter told him that he and Cummings had been sent out by Mr. Wood to be there "in case there was any trouble." Mr. Wood was an attorney, and he represented a man by the name of Gray, who appears to have claimed an interest in the Three Star Fraction mining claim. Waskey was aware that Gray asserted such claim, and he had expressed his willingness to allow him a representative on the mining claim, and at the time in question one Ryan, who was the representative so permitted, was on the ground. To the remark of the plaintiff in error, Waskey answered, "Why, Harry, there is not going to be any trouble here," to which the plaintiff in error replied that there might be. Waskey asked him if he had any papers from the court, to which he answered, "No." Waskey was then called to the telephone. He afterwards returned, and, resuming the conversation, he told the plaintiff in error that he could not allow him to stay there. The plaintiff in error replied that he certainly was going to stay there. In the course of the conversation the plaintiff in error and Cummings crossed the boundary line of the mining claim. Waskey then told plaintiff in error that now he was off the ground he did not want him or Cummings to come back, but they immediately stepped back, and the plaintiff in error said to Waskey: "Don't touch me. Keep your hands off me." This was repeated several times, with the further remark: "You keep your distance, Frank, or I am liable to hurt you." Waskey then went again to the telephone, and, after receiving instructions to eject the plaintiff in error and Cummings from the ground, he called together some of his men to assist him, and instructed them if they had any guns to lay them down, saying: "This is not going to be a gun play." Waskey and his men then stepped forward, intending, as he testified, to put the plaintiff in error and Cummings off the premises and to use, in case of resistance, sufficient force for that purpose, but with no intention to do them any bodily harm, when the plaintiff in error and Cummings drew their revolvers, and pointed the same at Waskey and his men, and the plaintiff in error said: "Now, Frank, you are a good friend of mine. You are the last man in the world I want to hurt, but I will have to ;" and he also said: "There is no occasion for all of this or for any trouble here. I am not going to interfere with you or molest you in any way." When the revolvers were drawn and pointed at Waskey and his men, they withdrew. Waskey testified that none of them had guns. The plaintiff in error on the trial offered to prove "that one Herbert Gray is the owner of an undivided one-half interest in the Three Star Fraction, the mining ground on which this alleged assault is said to have taken place ; that some time previous to the time of the alleged assault A. D. Sheldon and Capt. Pidgeon had a conversation with Frank Waskey in a cabin on the ground adjacent thereto, in which said Frank Waskey distinctly stated that he recognized the one-half interest of Herbert Gray, and conceded to these persons the right of Herbert Gray to have a representative on the ground at all times, and in pursuance thereof the said Herbert Gray did have a representative at the time of the alleged assault and for a period of three weeks prior thereto, and at the time alleged in the indictment the defendant J. H. Johnston and P. F. Cummings were upon the ground for the purpose of representing the interest of said Herbert Gray. This testimony is offered for the purpose of impeaching the testimony of the witness Frank H. Waskey."

Ira D. Orton, Roy G. Hudson, J. K. Woods, J. C. Campbell, W. H. Metson, and F. C. Drew, for plaintiff in error.

Henry M. Hoyt, U. S. Atty.

Before GILBERT and ROSS, Circuit Judges, and HUNT, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is contended on behalf of the plaintiff in error that if the defense had been allowed to prove that Waskey, the prosecuting witness, admitted Gray's ownership of a one-half interest in the mining claim, and conceded the right of the latter to have a representative at all times on the ground, and the other facts suggested in the offer of proof, they would have established the fact of the co-tenancy of Gray with the other owners, and therefore the right of Gray to the possession of the premises in person or by his agent, since by the Code of Alaska it is provided that "all persons having an undivided interest in real property are to be deemed and considered tenants in common." But this argument leaves out of consideration the nature of Waskey's possession. There is nothing in the evidence or in the offer of proof to show that he was a co-tenant with any one. He was a lessee, and as such it must be presumed that he was entitled to the exclusive possession of the leased premises, and therefore had the right to resist with a reasonable degree of force a trespass upon his possession. For aught that appears to the contrary, Gray may have been one of his lessors. According to the offer of proof, the only right which Waskey recognized in Gray was his right to be represented by one person on the premises; but this recognition of right had been fully answered by the permitted presence of Ryan, who, as the representative of Gray, was then, and for three weeks had been, on the premises. We find no error in the exclusion of the proffered testimony. Waskey was in the peaceable possession of the mining claim, operating it under a lease which gave him, as we must assume, the exclusive right to the possession when the plaintiff in error and Cummings, armed with revolvers, invaded his possession, claiming no right to be there except the fact that they had been sent there by one Wood, who was the attorney of Gray. They did not claim to be representatives of Gray, and they made no mention of Gray. It is not matter for surprise that Waskey believed, as he testified that he did, that these men were the advance guard of a set of men that were trying to overthrow his lease of the ground and take possession of it in some way or other. The proof which was offered and rejected would not have established their right to be there. For it might have been true that Gray was the owner of an undivided one-half interest in the mining claim, and that Waskey admitted his ownership and his right to have a representative on the ground, and that such a representative was on the premises at the time of the assault and had been there for three weeks prior thereto, and yet it would not follow that the plaintiff in error or Cummings had any right to enter upon the premises as the representatives of Gray or otherwise. Again, it is to be observed that the stated purpose and the only expressed purpose of the proffered testimony was to impeach the witness Waskey. It was not admissible for that purpose, for Waskey had not denied that he made the statement attributed to him which was embodied in the offer of proof.

It is contended that the court gave contradictory and inconsistent instructions, which were calculated to mislead the jury, to the prejudice of the plaintiff in error. The court instructed the jury as follows:

"A trespass merely against the property of another, not his dwelling house, is not a sufficient provocation to warrant the owner in using a dangerous weapon; therefore, if you find that defendant Johnston was representing any one having an interest in the lands mentioned, and that Johnston armed himself for the purpose of making an entrance on said lands, he would have no right to do so."

Again, the court instructed the jury as follows:

"You have nothing to do with the question of title, gentlemen, in your consideration of this case. If the ground were the defendant's and Waskey were in fact a trespasser, the law of Alaska provides a lawful way of obtaining possession of the property wrongfully withheld by another, and therefore, if you find that the assault, if there was an assault within the definition I have given you, was committed as charged, you will give no heed whatever to the question of who owned the ground."

And again:

"The person or persons in actual foot possession of the ground mentioned in the testimony had a right to command any intruder to depart, and, if he refused, to eject him from the premises by the use of sufficient physical force," etc.

It is said that in these charges the court in one breath instructed the jury that they had nothing to do with the question of title, and in the next said that if they found that the plaintiff in error was representing any one having an interest in the lands mentioned, and that he armed himself for the purpose of making an entry on said lands, he would have no right to do so. Upon the evidence the court was clearly right in charging the jury that they had nothing to do with the question of title in the case. Nor was there any error or inconsistency in charging that Johnston, even if he were representing the owner of an interest in the land, had no right to arm himself for the purpose of making an entry thereon. From the fact that one is the owner of an interest in land, it does not follow that he shall have the right to make an armed entry upon that land when the possession is exclusively and rightfully in another. The evidence was without dispute that Waskey had the exclusive and rightful possession. The presence on the premises of Gray's representative, Ryan, was evidently permitted by Waskey as a matter of grace and not of right, in order that Gray might have a witness to the clean-up.

It is contended further that the court erred in giving the instructions above referred to, in that he assumed therein as a fact that the revolver referred to as being in the possession of the plaintiff in error was a dangerous weapon within the contemplation of the statute. This particular feature of the instruction was not brought to the attention of the trial court, was not made the subject of an exception, and is not specified in the assignments of error. But aside from this, we do not find that the instructions were, on the ground suggested, justly subject to criticism. It was the contention of the prosecution that the revolver used by the plaintiff in error was a dangerous weapon. The court instructed the jury as to the right of the plaintiff in error to commit an assault with a dangerous weapon, and said:

"If, however, you should find from the evidence that the revolver used by Johnston was a dangerous weapon under the circumstances of its use at the

time of the affray, then you would not be justified in rendering a verdict of simple assault."

Error is assigned to the language of the district attorney during his closing argument to the jury as follows: "Then came this man Johnston, this hired gun-fighter, this hired ruffian." Timely exception was taken to this language by counsel for the plaintiff in error, but the record discloses no request to the court to instruct the jury in regard to the same, and, since the record does not contain the whole of the charge to the jury, we do not know that the court did not in fact give such instruction. The use of language by counsel, calculated to prejudice a defendant and not justified by the evidence, is improper and censurable, and should be discountenanced by the court. In such a case, it is the duty of the trial court to set aside the verdict unless satisfied that the improper language was not instrumental in securing it. But invective based on the evidence and inferences legitimately to be derived therefrom are not inhibited, and it is usually within the discretion of the trial court to determine whether or not the limits of professional propriety have been exceeded. Ordinarily the exercise of that discretion will not be reviewed in an appellate court unless the invective is so palpably improper that it may be seen to have been clearly injurious. State v. Brooks, 92 Mo. 542, 589, 5 S. W. 257, 330; State v. Calhoun, 72 Iowa, 432, 34 N. W. 194, 2 Am. St. Rep. 252; State v. Griffin, 87 Mo. 608, 615; People v. Perriman, 72 Mich. 184, 40 N. W. 425; State v. Emory, 79 Mo. 461. We are not convinced that the language so used by the district attorney was such as to justify the reversal of the judgment. The plaintiff in error and his companion came upon the mining claim armed with revolvers and in the hire of another. They were intruders upon Waskey's rightful and peaceable possession. They came with the evident intention of using their weapons with deadly effect in case their unlawful intrusion were interfered with. We cannot say that it was beyond the permissible limit of argument and invective to refer to them as "hired ruffians and hired gun-fighters."

Error is assigned to the refusal of the court to give to the jury certain instructions which were requested on behalf of the plaintiff in error. We cannot consider this assignment, for the reason that the whole of the charge given by the court to the jury is not in the record. Where the record does not contain the whole charge, it will be presumed that the court properly charged upon every branch of the case, and it will be presumed that further instructions were given to correctly modify erroneous instructions shown by the record, if it is very clear that these could have been so corrected and the record is incomplete. Bennett v. Harkrader, 158 U. S. 441, 15 Sup. Ct. 863, 39 L. Ed. 1046; Northern Pac. Ry. Co. v. Tynan, 119 Fed. 288, 56 C. C. A. 192, and cases there cited.

We find no error for which the judgment should be reversed. It is accordingly affirmed.

ROSS, Circuit Judge, dissents.