**UNITED STATES v. PIERCE.**

**SAME v. ROACH.**

No. 4952.

District Court, W. D. Tennessee.

Jan. 20, 1936.

Wm. McClanahan, U. S. Atty., and Joseph M. Bearman and R. G. Draper, Asst. U. S. Attys., all of Memphis, Tenn., for the United States.

L. E. Gwinn, of Memphis, Tenn., and Wm. H. Pierce, of Huntsville, Ala., for defendant J. E. Pierce.

Edgar Webster, of Memphis, Tenn., for defendant E. H. Roach.

MARTIN, District Judge.

The defendants, J. E. Pierce and E. H. Roach, were jointly indicted in twenty-one counts; in the first of which they were charged with the violation of title 18, § 76, U.S.C.A., in conspiring to commit an offense against the United States; and in the other twenty counts the charge was laid against them that they had violated title 18, § 76, U.S.C.A., in falsely pretending to be United States officers.

After a trial by jury which consumed four days' time, embracing night sessions, and in which forty-eight witnesses testified, the jury found both defendants guilty on seventeen counts of the indictment charging them with falsely pretending to be United States officers; acquitted them on two counts laying the same charge; and also acquitted them on the first count of the indictment, charging conspiracy. The remaining count was dismissed by United States attorneys for lack of evidence of the offense charged.

The testimony of government witnesses established that the defendant J. E. Pierce, a newspaper publisher of Huntsville, Ala., accompanied by E. H. Roach, called upon various farmers and persons closely identified with the interests of farmers in several West Tennessee counties; and that Pierce introduced himself and Roach as "representatives of the United States government, selling TVA units."

Concisely stated, the proof showed that the defendant Pierce would inquire of the prospective victim of the scheme if he were

interested in having electric power and good roads for his community and in the development of the natural and potential resources of his county. When the beguiled one—generally a farmer—would reply that he had such interest, Pierce, aided and abetted by Roach, would inform him that such advantages could be obtained if he and his neighbors would purchase units in TVA. Pierce represented that the United States government would co-operate with the residents of the county by matching "dollar for dollar," the total amount raised by the sale of TVA units in the county.

Substantive transactions had by the defendants with ten individuals in violation of title 18, § 76, U.S.C.A., were charged in the indictment, and proven at the trial. The defendants were convicted upon seven of these separate transactions, each embracing two counts, and upon three transactions, each covered by one count. In some instances the defendants obtained no money, and in others they did obtain money.

■ In all convictions of defendants on two counts of the indictment pertaining to one substantive transaction, money was obtained as a result of their falsely pretending to be United States officers. The jury verdict in this respect was consistent with the proof and the proper interpretation of the statute; because title 18, § 76, U.S. C.A., defines two offenses, one falsely impersonating an officer or employee of the United States and acting to defraud the United States or some person; and the other, falsely impersonating an officer or employee, and demanding or obtaining money or other valuable thing with intent to defraud. United States v. Rush (D.C. Wash.1912) 196 F. 579; United States v. Taylor (D.C.Mo.1900) 108 F..621; United States v. Curtain (D.C.S.C.1890) 43 F. 433; (principle recognized) Lamar v. United States (N.Y.1916) 241 U.S. 103, 36 S.Ct. 535, 60 L.Ed. 912; Brafford v. United States (C.C.A.6) 259 F. 511.

The separate substantive transactions were also distinct offenses, each cognizable by title 18, § 76, U.S.C.A. This principle is recognized in Scala v. United States (C.C.A.7, 1931) 54 F.(2d) 608, certiorari denied by the Supreme Court of the United States, 285 U.S. 554, 52 S.Ct. 411, 76 L.Ed. 943.

The defendants filed seasonably their joint motion for a new trial, specifying seven grounds. On consideration of the motion for a new trial, counsel for the defendants and for the government have been heard in elaborate and skillful oral argument, consuming eight hours of court sessions.

The first, second, and third grounds of the motion for a new trial charged, respectively, that the court erred (1) in overruling defendants' motion to quash the indictment, (2) in overruling defendants' demurrer to the indictment, and (3) in overruling defendants' motion for a directed verdict. The court stated, at the conclusion of the argument, that the reasons offered in support of the first three assignments of error are insufficient to merit further consideration.

■ The seventh ground of the motion for a new trial is predicated upon newly discovered evidence, supported by affidavits. All of such newly discovered evidence is deemed cumulative in support of the defendants' theory, adequately presented at the trial, and is of such slight significance that had it been introduced at the trial, the verdict of the jury would not have been affected thereby. Ample testimony was produced by defendants to the effect that they had sold advertising space in the Huntsville Daily Register, and not TVA units, to numerous persons whom they had approached. But the verdict of the jury clearly rested upon the testimony of the host of witnesses who swore that defendants had represented to each of them that they were representatives of the government, selling TVA units. The seventh ground of the motion is, therefore, considered to be without merit. See Miller v. Commonwealth (C.C.A.6) 40 F.(2d) 820.

■ Following oral argument of the motion, the court has taken under advisement and thoughtfully deliberated upon the force of the able argument, supplemented by exhaustive briefs, of the counsel for defendants upon the fourth, fifth, and sixth grounds of the motion.

When analyzed, these three assignments so intertwine into the pattern of a single proposition of law that logic demands that they be considered as a whole, and not separately. Each rests upon the alleged unfair and prejudicial attitude and actions of the government attorneys; the fourth assignment on specified questions asked in the examination of witnesses, the fifth assignment on specified instances of improper argument, and the sixth assign-

ment on questions asked and statements made in the presence of the jury as to indictments and proceedings against the defendant Pierce in the state of Mississippi.

It is not contended by counsel for defendants that the court failed to exclude from the jury the consideration of incompetent evidence, or failed to instruct the jury to disregard the alleged improper argument of the United States attorneys. In fact, in the voluminous record of the trial, no exception appears to any ruling of the court upon the objections of the defendants to arguments of the government attorneys, or to the rulings of the court in admitting or excluding evidence upon material matters.

Their contention is based upon allegations of continued disregard by the district attorney and his assistants of the rulings and admonitions of the court—not, of course, to the extent of contempt, but to the degree of material prejudice of the right of defendants to a fair trial. It is conceded that the court constantly sustained objections to improper questions asked and arguments made by the government attorneys. It is urged that the cumulative effect of the extraneous prejudicial matter presented before the jury, even though the court excluded it from their consideration, tended to so prejudice the minds of the jurors as to result in an unfair trial and conviction of defendants.

This opinion would be extended to an unreasonable length should all specific instances of alleged misconduct of government counsel be detailed. It is sufficient to recite some of the most important instances, in which the defendants charge that government attorneys transgressed; conveying to the jury by improper questions the suggestion that defendant Pierce had been tried in the federal courts of Alabama; that he could not obtain credit in his home town of Huntsville, Ala., or procure reputable witnesses who resided there to testify to his good character; that United States Senator Bankhead of Alabama, after interviewing Senator McKellar of Tennessee, could not be procured as a character witness for defendant Pierce; that Pierce had transferred property to his wife and son in fraud of creditors; that he had been frequently detained and investigated by law enforcement officials; and that he was under indictment in the state courts of Mississippi and was a fugitive from justice of that state.

A few illustrative excerpts from the record, sufficient to demonstrate the character of action taken by the court in certain of the specific instances alleged as misconduct by government counsel, will be quoted.

During the cross-examination of defendant Pierce, he was asked by the district attorney:

"Q. You are under bond right now for a complaint in Mississippi, aren't you? A. No sir; there has been no complaint."

Whereupon, Mr. Webster, attorney for defendant Roach, said: "If your Honor please, that matter has heretofore been referred to, and there is absolutely nothing to it. The matter has been considered by the Grand Jury, and a not true bill returned. Why go further into it?"

Then followed the following colloquy:

"Mr. Draper: (Asst. District Atty.) If your Honor please, if Mr. Webster wants to testify let him be sworn and take the stand.

"The Court: The Court could not receive any statement about the matter except from the witness stand.

"Mr. Webster: Well, I think this, if your Honor please, the Attorney General's office, if it really wants to, can find out the true situation in a very few minutes; all it has to do is to call Mr. Lester Fant, the Attorney General, at Holly Springs, Mississippi.

"The Court: There is no need to go into that here.

"Mr. Webster: And they will find that the matter was presented to the Grand Jury at Aberdeen, Mississippi, and no indictment returned.

"Mr. McClanahan (District Atty.): While I am doing that, if your Honor please, I will find out whether the draft was paid, if they want me to.

"Mr. Gwin (Atty. for defendant Pierce): Also if he has been back there or not.

"Mr. Draper: Another thing, there are other charges against the man, our information is, and our information further is that those charges will be submitted to the Grand Jury, and he is under investigation on two or three irregularities.

"Mr. Webster: We object to that.

"Mr. Draper: We object to what you said.

"The Court: The jury will disregard the statements made about this matter, and you gentlemen will receive in evidence only evidence given under oath and from the witness stand.

"Mr. Gwin: I want to ask one question.

"The Court: All right.

"Mr. Gwin: You were informed by your counsel that the Grand Jury had investigated the matter and a no true bill was returned against you on these charges?

"The Witness (Defendant Pierce): That is true.

"Mr. Gwin: That's all."

Sheriff Blanton of Kosciusko, Miss., was called by the government as a rebuttal witness to contradict defendants Pierce and Roach upon matters about which they had testified. The court excluded the witness and the jury during an extended argument on the admissibility of his testimony. The court had ruled that no evidence of new substantive transactions would be admissible, but that the government would be limited strictly to rebuttal of the defendants' testimony on material matters. After much wrangling among counsel during the absence of the jury, the following proceedings occurred:

"Mr. Gwin: Suppose we bring the witness in here and examine him and we will probably save a lot of time.

"Gen. McClanahan: (the District Atty.) I want to know first how far you are going to limit us.

"The Court: You know how carefully this Court is trying to prevent in any way letting incompetent matter to the jury, so the Court wants counsel to confine their remarks to objections already stated and in the record, so that no incompetent matter will be allowed. Call the jury.

"Mr. Webster: I understood your Honor said you wanted this witness examined in the absence of the jury.

"The Court: No. I said I wanted questions asked and no comments made. I don't want anything incompetent whatever to go before the jury.

"Mr. Webster: Oh. (Jury and witness return to courtroom.)

"The Court (addressing the witness): Now, the Court cautions you not to answer the question if there is an objection made until I have ruled whether it may be answered or not.

"The Witness: Yes, sir."

The district attorney then proceeded to examine the witness (Blanton); and he was separately cross-examined by counsel for each of the defendants, at the conclusion of which the transcript shows:

"Mr. Gwin (Att'y for Defendant Pierce): Now, if your Honor please, I move for the exclusion of his testimony.

"Mr. Webster (Att'y for Defendant Roach): I want to cross-examine just a little further.

"The Court: Do you withdraw your motion for the time being?

"Mr. Gwin: Surely. (after cross-examination by Mr. Webster, Mr. Gwin made the following motion)

"Mr. Gwin: I want to renew my motion.

"Mr. Webster: If the Court please, I think I may want to join in Mr. Gwin's motion. I will let him make it.

"Mr. Gwin: I want to move the exclusion of all this evidence about an indictment there in the State court, because there is no evidence that is offered for the purpose of impeaching the defendants Pierce and Roach, and there is no evidence that is competent on the part of this man to show that they had any knowledge or notice of any such indictment, or ever heard of it, until he testified.

"The Court: The motion is sustained, and the jury will disregard completely the testimony of the witness as being incompetent, and that means, gentlemen, that you must not consider what he has testified to here as a part of the evidence in this case."

Congressman Carmichael had testified as a character witness for the defendant Pierce. On cross-examination, he was asked if he knew that the defendant had been tried in the federal court of Alabama. The defendant objected, and the court ruled:

"I think it would not be receivable in evidence to show directly that the defendant had been indicted for something. Of course, questions to test the character of the witness' knowledge are competent, provided they do not invade some rule of evidence."

No objection or exception to the ruling was made by the defendant's attorney; whereupon, the district attorney asked:

"You know that as a part of his reputation in Huntsville that his credit rating

is very bad in Huntsville, Alabama, Congressman? A. I don't know that."

As to the assignment of error relating to the inquiry of the witness Carmichael concerning a certain letter, the transcript shows:

"Q. (by the Dist. Atty.) Congressman, he (defendant Pierce) came to Washington to see you and Senator Bankhead, didn't he? A. (Congressman Carmichael of Alabama) He did.

"Q. About getting the indictment in this court suppressed? A. He came to see Senator Bankhead and me about a threatened indictment I think in this case.

"Q. Now, Congressman, you and Senator Bankhead went to see Senator McKellar about it, did you not? A. We did.

"Q. And Senator McKellar wired this office down here and I wired back; and also sent a letter. You saw the wire and letter, did you not, Congressman? A. I saw the wire, and I think I saw the letter.

"Q. And afterwards you discussed that with Senator Bankhead, did you not? A. I don't think I did except in a casual way. We didn't discuss any of the contents of the paper.

"Q. Now, Senator Bankhead wrote Senator McKellar after that, and, said 'Dear Kenneth:'

"Mr. Gwin: Just a moment. If your Honor please, I don't know anything about what is in the letter, but only that it is a letter from Senator Bankhead to Senator McKellar. I would like for it to be competent—

"Q. I want to show you the letter—

"The Court: Well, he offers to show you the letter. I don't know what the purpose is as yet.

"Q. Congressman, what town did you say you lived in? A. Tuscumbia, Alabama."

Thus, the incident ended without exception by the defendants. Later, the district attorney inquired of the defendant Pierce on cross-examination as to the letter, exhibiting it but not reading it to him.

Defendants' counsel lay great stress upon this as misconduct on the part of the government attorneys, especially in the inference drawn that Senator Bankhead could not be induced to testify to the character of defendant Pierce after the interview which he had sought with Senator McKellar.

Nowhere in the record will be found any exception by defendants' attorneys to any action of the court in failing to instruct the jury to disregard incompetent, immaterial, or extraneous matter contained in any question, statement, or argument of the district attorney and his associates. Throughout the trial, the court endeavored to exclude all such matters and to hold counsel within the bounds of competent subject-matter. Wide latitude was allowed counsel on both sides in cross-examination. Perhaps they vied frequently in treading by-paths unrestrained by the court of his own motion, but whenever objections were made to incompetent or irrelevant matter, the court promptly sustained them.

Exception is made that the assistant district attorney stated to the jury in substance that the defendant Pierce "rushed to Washington in an attempt to suppress a prosecution, calling upon Senator Bankhead and Congressman Carmichael, who went to see Senator McKellar to get him to use his influence with the office of the district attorney at Memphis, Tennessee, sending a telegram; that when General McClanahan answered that telegram and it was read to Senator Bankhead by Senator McKellar, that Senator Bankhead washed his hands of the whole matter and wrote a letter to Senator McKellar which General McClanahan then had in his files, this being the same letter which General McClanahan had tried to get into the record when he was cross-examining defendant Pierce and the witness Carmichael." Counsel concede that the court promptly sustained their objection, but complain that in his closing argument the district attorney again referred to the matter, stating that Senator McKellar in this, as in other matters, always did the proper thing.

The record shows that when the objection was made to the opening argument of the government along this line, the court cautioned: "The District Attorney will confine his argument to the testimony in this case, without irrelevant remarks."

Again, when the assistant district attorney's argument was objected to, the record shows:

"(Asst. Dist. Atty. Bearman) Jurors, this case means a lot not only to the Government, but to the people of our rural communities.

"Mr. Gwin (Att'y for Defendant Pierce); If your Honor please, I want to

except to that argument as an unwarranted appeal to class prejudice.

"Asst. Dist. Atty.: Oh, I don't want to be accused of that.

"The Court: The jury will not consider the last remark to which counsel for defendant has objected."

The government attorney acquiesced in the court's ruling, made a few remarks about something else, and then concluded his argument, as follows: "Gentlemen, I hope no one will take anything I have said as an appeal to class prejudice. Many of you have known me since I was this big (indicating), nearly every one of you I know quite well, and you know that I make no appeal of that sort at any time. You know that what I am doing here I honestly believe ought to be done. You know that if I thought for a minute that it ought not to be done that there is not enough power in this universe to keep me from getting up and telling you that it ought not to be done. I have taken an oath and it will be my aim to keep that oath whenever a man in my judgment ought to be prosecuted, if I am sustained in strength I will do it fairly, I hope, honestly I know, and jurors, with these remarks, I thank you for your courteous attention."

In considering these assignments of error, based upon alleged misconduct of government counsel in stepping aside from the record to insinuate prejudicial extraneous matter, it seems appropriate to comment that astute attorneys for defendants were, themselves, at times not without fault in abandoning a bird hunt to chase rabbits.

Retaining legalistic language only in mixed metaphor, the court, sua sponte, did not always rigidly enforce the code of the Marquis of Queensbury in a bare-knuckled fight between heavy-weight legal opponents; but adherence was strictly required to London prize-ring rules.

For example (cross-examination of defendant Roach):

"Q. (Asst. Dist. Atty.) And the 'sucker' was in the middle, as he stated, you were on one side, Pierce on the other, and the 'sucker' in the middle?

"Mr. Gwin: If your Honor please, I object to that question.

"The Court: Sustained."

Discarding levity of expression, which has not been accompanied by levity of thought, in the consideration of the serious questions presented, authorities binding upon this court—the decisions of the Sixth Circuit Court of Appeals and the Supreme Court of the United States—will now be reviewed in their relation to the subject-matter of the assignments of error under discussion.

In Pennsylvania Co. v. Roy, 102 U.S. 451, at page 459, 26 L.Ed. 141, decided in 1880, the Supreme Court held that where, before the final submission of a case to the jury, irrelevant evidence, which had been admitted, was withdrawn and the jury were instructed to disregard it, an exception to the action of the court will not be sustained for the reasons thus given:

"The charge from the court that the jury should not consider evidence which had been improperly admitted, was equivalent to striking it out of the case. The exception to its admission fell when the error was subsequently corrected by instructions too clear and positive to be misunderstood by the jury. The presumption should not be indulged that the jury were too ignorant to comprehend, or were too unmindful of their duty to respect, instructions as to matters peculiarly within the province of the court to determine. It should rather be, so far as this court is concerned, that the jury were influenced in their verdict only by legal evidence. Any other rule would make it necessary in every trial, where an error in the admission of proof is committed, of which error the court becomes aware before the final submission of the case to the jury, to suspend the trial, discharge the jury, and commence anew. A rule of practice leading to such results cannot meet with approval."

Hopt v. Utah (1887) 120 U.S. 430, 7 S.Ct. 614, 620, 30 L.Ed. 708, held that an allusion, in the final argument to the jury by the counsel for the prosecution, to the case as having been many times brought before the tribunal, is not a ground for reversing a judgment under the statute of Utah, which declares that on a new trial the "former verdict cannot be used or referred to either in evidence or in argument." Laws Utah 1878, p. 126, § 317.

When excepted to, the remark of the prosecuting attorney was withdrawn by him, and the court said to the jury that the case was to be tried on the evidence, and that they were not to consider it with respect to any previous trial, but only on the evidence given on the trial before them.

Waldron v. Waldron, 156 U.S. 361, 380, 15 S.Ct. 383, 388, 39 L.Ed. 453, decided in 1895, is heavily depended upon by counsel for defendants, because it states the rule that "it is elementary that the admission of illegal evidence, over objection, necessitates reversal; and it is equally well established that the assertion by counsel, in argument, of facts, no evidence whereof is properly before the jury, in such a way as to seriously prejudice the opposing party, is, when duly excepted to, also ground therefor. [Citing authorities from state courts.]"

Counsel stress the language of the court, 156 U.S. 361, at page 383, 15 S.Ct. 383, 389, 39 L.Ed. 453:

"There is an exception, however, to this general rule, by virtue of which the curative effect of the correction, in any particular instance, depends upon whether or not, considering the whole case and its particular circumstances, the error committed appears to have been of so serious a nature that it must have affected the minds of the jury despite the correction by the court."

But the court continues the discussion and quotes with approval the language of Mr. Justice Field in Hopt v. Utah, supra:

"But, independently of this consideration as to the admissibility of the evidence, if it was erroneously admitted its subsequent withdrawal from the case, with its accompanying instruction, cured the error. It is true that in some instances there may be such strong impression made upon the minds of the jury by illegal and improper testimony that its subsequent withdrawal will not remove the effect caused by its admission, and in that case the original objection may avail on appeal or writ of error, but such instances are exceptional."

Dunlop v. United States (1896) 165 U.S. 486, 17 S.Ct. 375, 41 L.Ed. 799, demonstrates even more forcibly than the earlier cases how exceptional a case must be to call for reversal by the Supreme Court of the United States, for unjustified, prejudicial remarks of counsel. The court discusses the matter, 165 U.S. 486, at page 498, 17 S.Ct. 375, 379, 41 L.Ed. 799:

"The thirty-fifth and thirty-sixth assignments of error were taken to certain remarks made by the district attorney in his argument to the jury, one of which is as follows: 'I do not believe that there are twelve men that could be gathered by the venire of this court within the confines of the state of Illinois, except where they were brought and perjured in advance, whose verdict I would not be willing to take upon the question of the indecency, lewdness, lasciviousness, licentiousness, and wrong of these publications.' To this language counsel for the defendant excepted. The court held that it was improper, and the district attorney immediately withdrew it. The action of the court was commendable in this particular, and we think this ruling, and the immediate withdrawal of the remark by the district attorney, condoned his error in making it, if his remark could be deemed a prejudical error. There is no doubt that, in the heat of argument, counsel do occasionally make remarks that are not justified by the testimony, and which are, or may be, prejudicial to the accused. In such cases, however, if the court interfere, and counsel promptly withdraw the remark, the error will generally be deemed to be cured. If every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since, in the ardor of advocacy, and in the excitement of trial, even the most experienced counsel are occasionally carried away by this temptation."

Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 19 L.Ed. 1314, decided April 15, 1935, presents a strong condemnation by the Supreme Court of misconduct of United States prosecuting attorneys. The court says, 295 U.S. 78, at page 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314:

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

And the court adds:

"It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none."

The gross degree of misconduct on the part of the district attorney in the case under examination by the Supreme Court appears from their language, 295 U.S. 78, at page 84, 55 S.Ct. 629, 631, 79 L.Ed. 1314, of the opinion:

"He [U. S. Prosecuting Atty.] was guilty of misstating the facts in his cross-examination of witnesses; of putting into the mouths of such witnesses things which they had not said; of suggesting by his questions that statements had been made to him personally out of court, in respect of which no proof was offered; of pretending to understand that a witness had said something which he had not said and persistently cross-examining the witness upon that basis; of assuming prejudicial facts not in evidence; of bullying and arguing with witnesses; and, in general, of conducting himself in a thoroughly indecorous and improper manner."

From the marginal excerpts of the trial record appended to this recent opinion of the Supreme Court, the misconduct of the United States attorney in the Berger Case was most glaringly manifest. It could not be even worthily intimated that the United States attorney and his assistants in the case at bar remotely approached any such comparable conduct as to bring them within the condemnation of the language of the court in the Berger Case.

Indeed, the counsel for defendants do not even contend that General McClanahan and his assistants were guilty of any unethical conduct, but merely charge them with overzealousness to the point of prejudicial error in the examination of witnesses and argument before the jury. In their brief in support of their motion for a new trial, counsel for defendants say:

"In what has been said there is no intention to reflect upon the high character or professional ethics of the District Attorney and his assistants. They simply permitted their intense belief in the guilt of the accused and their zeal for a conviction to lead them beyond the limit of a fair examination and argument."

It is highly significant that the Supreme Court of the United States did not desire their decision in Berger v. United States, supra, to be misunderstood as meaning that courts must reverse convictions in criminal cases for improper argument or misconduct of counsel, if evidence of the guilt of the accused is overwhelming. Mr. Justice Sutherland, declaring the unanimous opinion of the court, says (295 U.S. 78, at pages 88, 89, 55 S.Ct. 629, 633, 79 L.Ed. 1314):

"The court below said that the case against Berger was not strong; and from a careful examination of the record we agree. * * * In these circumstances prejudice to the cause of the accused is so highly probable that we are not justified in assuming its nonexistence. If the case against Berger had been strong, or, as some courts have said, the evidence of his guilt 'overwhelming,' a different conclusion might be reached."

And, in an earlier portion of the opinion, 295 U.S. 78, at page 82, 55 S.Ct 629, 631, 79 L.Ed. 1314, the court had said:

"Evidently Congress intended by the amendment to section 269 [28 U.S.C.A. § 391] to put an end to the too rigid application, sometimes made, of the rule that error being shown, prejudice must be presumed; and to establish the more reasonable rule that if, upon an examination of the entire record, substantial prejudice does not appear, the error must be regarded as harmless."

This completes the review of the leading decisions of the Supreme Court of the United States upon the point in issue. It now becomes pertinent to discuss and apply the decisions of the Circuit Court of Appeals for the Sixth Circuit upon the subject-matter.

Beginning with Robilio v. United States (C.C.A.6, June, 1923) 291 F. 975, the court cited Dunlop v. United States, 165 U.S. 486, 498, 17 S.Ct. 375, 41 L.Ed. 799, supra, in support of the proposition that the general rule is that improper argument of a prosecutor is no ground for reversal, where the jury is explicitly directed to disregard it. The court also cited: Phelan v. United States (C.C.A.9) 249 F. 43; McHenry v. United States, 51 App.D.C. 119, 276 F. 761, 768; Bettman v. United States (C.C.A.6) 224 F. 819, 831; Lanier v. United States (C.C.A.5) 276 F. 699, 701.

In Volkmor v. United States (C.C.A.6, 1926) 13 F.(2d) 594, the court held that where the district attorney, at different times in his argument, referred to defendant as a skunk, a weak-faced weasel, and a cheap, scaly, slimy crook, it was the court's duty, without any objection and on his own motion, to reprove counsel and to instruct the jury to disregard the remarks; and reversed the case for his failure to do so. The court said, 13 F.(2d) 594, 595 [3, 4]:

"Whether there has been a correction of the abuse of argument by a withdrawal of the objectionable parts of it depends upon whether on considering the whole case the error appears to have been so serious that it likely affected the minds of the jury despite the attempted correction by counsel or court. Waldron v. Waldron, 156 U.S. 361, 15 S.Ct. 383, 39 L.Ed. 453; Graves v. United States, 150 U.S. 118, 14 S.Ct. 40, 37 L.Ed. 1021; Wilson v. United States, 149 U.S. 60, 13 S.Ct. 765, 37 L.Ed. 650. It is true that in Chadwick v. United States, 141 F. 225, 72 C.C.A. 343, Dunlop v. United States, 165 U.S. 486, 17 S.Ct. 375, 41 L.Ed. 799, and a number of other cases, it has been held that, if an objection is made to an improper argument, and the court sustains the objection, or counsel withdraws the improper remark, the error will generally be deemed to be cured. If, however, upon a consideration of the whole case, the error appears so egregious as to have affected the minds of the jury, despite the attempted correction, the verdict must be set aside. This case strikingly illustrates the justice of that rule."

In Chadwick v. United States (C.C.A.6, 1905) 141 F. 225, 246, cited in the preceding quotation, the court quoted from Dunlop v. United States, 165 U.S. 486, 487, 17 S.Ct. 375, 41 L.Ed. 799, supra, and said:

"Nothing is better settled than that the defendant who deems himself prejudiced by the language of counsel should promptly and publicly object and point out the language deemed improper and then take exception if the trial judge fail to condemn it."

In Sparks v. United States (C.C.A.6, 1917) 241 F. 777, it was held that, while certain prejudicial argument of counsel standing alone might not require reversal, the border line was sufficiently approached as to warrant consideration in connection with other error alleged. But, said the court (241 F. 777, at page 790):

"Had the court sustained the objection, and ruled the argument improper, we think reversible error would not have resulted. Kellogg v. United States (C.C.A.6) 103 F. 200, 202, 43 C.C.A. 179; Dunlop v. United States, supra. And although the court did not rule upon the objection, or hold the language improper, reversible error was not committed, unless the matter objected to was 'plainly unwarranted and so improper as to be clearly injurious to the accused.' Chadwick v. United States, supra, 141 F. 225, 245, 72 C.C.A. 343; Johnston v. United States (C.C.A.9) 154 F. 445, 449, 83 C.C.A. 299; Diggs v. United States (C.C.A.9) 220 F. 545, 556, 557, 136 C.C.A. 147."

It will be noted that the Circuit Court of Appeals for the Sixth Circuit cited two decisions from the Ninth Circuit. In the first of these, Johnston v. United States, 154 F. 445, the court held that the invectives "hired ruffians and hired gun-fighters," applied by the district attorney to the defendants, could not be said to be so far beyond the permissible limit of argument as to call for reversal. The rule was thus stated (154 F. 445, page 449):

"The use of language by counsel, calculated to prejudice a defendant and not justified by the evidence, is improper and censurable, and should be discountenanced by the court. In such a case, it is the duty of the trial court to set aside the verdict unless satisfied that the improper language was not instrumental in securing it. But invectives based on the evidence and inferences legitimately to be derived therefrom are not inhibited, and it is usually within the discretion of the trial court to determine whether or not the limits of professional propriety have been exceeded. Ordinarily the exercise of that discretion will not be reviewed in an appellate court unless the invective is so palpably improper that it may be seen to have been clearly injurious."

The other case from the Ninth Circuit, Diggs v. United States, 220 F. 545, page 556, stated: "It is the general rule that improper remarks in argument by the prosecuting attorney, although prejudicial, do not justify reversal, unless the court has been requested to instruct the jury to disregard them, and has refused to do so."

Carter v. State of Tennessee, 18 F.(2d) 850, page 853 (C.C.A.6, 1927), contains a

clear-cut statement of the duty of objecting counsel to move for a mistrial, if aggrieved by improper argument of counsel not deemed cured by instructions of the court. The Court of Appeals for the Sixth Circuit, speaking through Judge Hickenlooper, said:

"Upon authority of the case of 'Optner v. United States, supra [(C.C.A.) 13 F.(2d) 11], it is insisted that, notwithstanding the court may have committed no error in ruling upon an objection raised to misconduct, yet a new trial should be awarded, where it is manifest that such misconduct has caused a miscarriage of justice, or, otherwise expressed, where it is clearly apparent that reproof and admonition were wholly impotent to rid the case of the prejudicial effect of such misconduct upon the minds of the jury. Cf. Toledo, St. L. & W. R. Co. v. Burr & Jeakle et al., 82 Ohio St. 129, 134, 92 N.E. 27, 137 Am.St.Rep. 771. This is not, in our opinion, such a case. Not only is the evidence sufficient to support the verdict, but, conceding that in the event of such misconduct the duty rests upon the court to immediately interfere sua sponte, reprimand the offending counsel, and admonish the jury (Watkins v. State, 140 Tenn. 1, 8, 203 S.W. 344), it cannot be assumed, in the absence of a showing to the contrary, that the court did not perform its full duty in this particular. Warder, Bushnell & Glessner Co. v. Jacobs, 58 Ohio St. 77, 82, 50 N.E. 97.

"The general rule is clearly that such 'improper argument of a prosecutor is no ground for reversal, where the jury is explicitly directed to disregard it.' Robilio v. United States, 291 F. 975, 986 (C.C.A.6). See, also, Copeland v. United States, 55 App.D.C. 106, 2 F.(2d) 637. And where, as here, it must be assumed that the court did reprove counsel and properly instruct the jury at the time, such prejudice as was not thereby removed, or could not be removed by such instruction, was, we think, waived by the failure of the defendant to move for mistrial. He should not thereafter be permitted to apparently consent to the continuance of the trial, which could presumably be discontinued only upon his motion after the jury had been sworn and he once placed in jeopardy, thus taking his chance of a favorable verdict, and if the verdict be 'guilty' then assert it was founded to a material extent upon misconduct of opposing counsel. Cf. Levin v. United States, 5 F.(2d) 598, 602 (C.C.A.9)."

Distinguished counsel for defendant Pierce urges, as conclusive of the right of his client to a new trial in the case at bar, the authority of Pharr v. United States (C.C.A.6) 48 F.(2d) 767, in which, as attorney for the convicted defendant, he was successful in obtaining reversal. This court finds the facts of the Pharr Case completely distinguishable from the record in the case at bar.

Material points of difference are:

First, and most important, in the Pharr Case a motion to discharge the jury was made in time to raise the question of error; in the instant case, no such motion for mistrial was made.

Second, in the Pharr Case the district attorney, by questioning the defendant, improperly placed before the jury that a plea of nolo contendere equivalent to a plea of guilt had been entered and withdrawn. As the court said [48 F.(2d) 767, at page 770], "The effect of the examination was to bring home to the jury the equivalent of a confession of guilt," and "counsel for the government and the court elsewhere in the trial treated the plea of nolo contendere as one of guilt." It further appears that counsel for the government, in his concluding argument, had stated that a codefendant indicted with Pharr had entered a plea and served his sentence. The court concluded:

"These statements served to emphasize the improper conduct of counsel, and in such circumstances we cannot think that the admonition of the court had the effect of removing the harmful impression made by the inadmissible facts. Because of this misconduct on the part of counsel, the judgment must be reversed."

Diligent search of the record in the case at bar will reveal no conduct on the part of the district attorney and his assistants approaching in remote degree the prejudicial and erroneous misconduct of the prosecuting attorney, as reported in the Pharr Case.

In a later case, Frantz v. United States (C.C.A.6, Jan. 1933) 62 F.(2d) 737, at page 740, the court said:

"In Pharr v. United States, 48 F.(2d) 767, this court laid down the principle that whether a reversal is required because of misconduct of counsel depends on whether such a fixed impression was made on the minds of the jury as to influence the verdict and whether the admonition of the court had the effect of removing the harm-

311

ful impression already made. See, also, to the same effect, Volkmor v. United States, 13 F.(2d) 594 (C.C.A.6)."

In the last-cited case, the court based its reversal of the conviction in the court below upon related facts, showing that "the District Judge was quite evidently convinced of the guilt of the accused, and took no pains to avoid disclosure of this fact to the jury"; and that his prejudicial remarks in the presence of the jury during the trial were not cured by the admonition in his charge that the jury should act upon their own independent judgment, uninfluenced by what others, including the court, might think or say.

In the case at bar, the judge not only sustained every objection of the defendants to improper examination, remarks, and argument of the district attorney and his assistants, but most seduously refrained from any personal comment which could have indicated to the jury any opinion entertained by him upon the question of the guilt or innocence of the accused.

In a recent case (rehearing denied Jan. 11, 1935), Fidelity Phenix Fire Ins. Co. v. Vallone, 74 F.(2d) 137, the Court of Appeals for the Fifth Circuit cited Dunlop v. United States, 165 U.S. 486, 17 S.Ct. 375, 41 L.Ed. 799, supra, Chadwick v. United States, 141 F. 225, supra, and Diggs v. United States, 220 F. 545, supra; and held that the latitude allowable in argument to the jury is largely discretionary and the judgment is not subject to reversal for refusal of the court to overrule objections to statements made in argument of counsel, unless it clearly appears that discretion was abused.

In the case now under consideration, the judge not only overruled no objections to questions asked or statements and arguments made by the district attorney; but, on the contrary, sustained all such objections.

The insistence of counsel for defendants upon prejudicial error in the conduct of the district attorney, in skirmishing before the jury with respect to a letter written by Senator Bankhead to Senator McKellar without exhibiting the letter, seems fully answered by Tubbs v. United States (C.C.A.8) 105 F. 59, in which the court quoted the same language from Pennsylvania Co. v. Roy, 102 U.S. 451, 459, 26 L. Ed. 141, supra, heretofore quoted by this court, and held that the introduction in evidence by mistake in a criminal case of a letter which was inadmissible was not an error which cannot be cured by the court by striking it out on discovering the mistake, and directing the jury not to consider it, or any evidence relating to it.

In the instant case, the letter was not even read to the jury and no ruling by the court was invoked. The incident flitted off lightly as mere sparring between adroit counsel, without the striking of a blow. De minimis non curat lex.

In the clearness of legal vision made possible by a review of the foregoing illuminative authorities, casting consistent rays of light upon the question here for decision, this court is of the firm opinion that no prejudicial error has been committed against the defendants by the United States attorney and his assistants.

The court permitted searching, extensive cross-examination of all accusing witnesses produced by the government. No limit was placed upon the number of witnesses whom defendants might introduce to testify that they were approached by the defendants and sold advertising space in a Huntsville, Ala., newspaper, and not "TVA units," and that no misrepresentations were made to them that the defendants were officers or employees acting under authority of the United States. Testimony of many witnesses who so testified in behalf of defendants was received in evidence.

Strict rules of evidence were transcended by the court in exercising discretion, over the objection of the government attorneys, to permit the defendant Pierce to prove his good character by the introduction of unsworn letters of commendation, not supported by the testimony of the writers. This wide discretion was exercised because the defendant was on criminal trial in a district of which he was nonresident, and the court deemed it just that he should have the benefit of every possible conclusion which might be drawn from his previous good character, even though certified by unsworn letters which were inadmissible under rules of evidence.

Twenty-five government witnesses were introduced; of whom ten testified each to separate substantive transactions constituting offenses on the part of defendants in falsely pretending to be officers or employees acting under authority of the United States. From seven of these, money was obtained by the defendant Pierce— aided and abetted by defendant Roach—

and from one, a check for $20, upon which payment was subsequently stopped. False pretenses that the defendants were United States officers or representatives were made to two of these witnesses, but no money was obtained from them.

Numerous other witnesses for the government testified to like pretension made to them by the defendants in violation of title 18, § 76, U.S.C.A. The testimony of these witnesses was admitted in evidence in proof of the conspiracy charges, and was corroborative of the testimony of the ten witnesses with whom transactions by the defendants formed the basis of the substantive offenses charged in the indictments.

The appearance, manner, and demeanor of the government witnesses, their good standing in their respective communities, their manifest fidelity to truth, and the consistency of their testimony under rigid cross-examination combined to convince the jury, and the court also, of the guilt of the accused.

■ The jury consisted of men of high degree of intelligence and worthy rating in their community. It was obvious that, throughout the long and arduous trial, they followed the testimony with close and careful attention. The government has filed an affidavit from the members of the jury that they were uninfluenced in reaching their verdict by any of the prejudicial questions, comments, or arguments of the government attorneys complained of by the defendants on this motion for a new trial; but the court will not consider these affidavits. See Mattox v. United States, 146 U.S. 140, 148, 13 S.Ct. 50, 36 L.Ed. 917.

The affidavits of the jurors which the court has declined to consider are not needed to convince the court, beyond peradventure, that no irrelevant, incompetent, or improper statement of the district attorney and his assistants remotely influenced the verdict of the jury. The defendants were guilty of the crime for which they were convicted, beyond any shadow of reasonable doubt, and no extraneous matter brought out in the zeal of the prosecuting attorneys added any weight to the certainty of their guilt.

The court carefully instructed the jury that it was incumbent upon the government to establish the guilt of the accused to their satisfaction beyond a reasonable doubt, and concededly correctly defined reasonable doubt. The court specifically charged that the certainty of guilt of the defendants is required "as to every proposition of proof requisite to constitute the offense." No exception was taken by defendants to the charge. The court included as a part of the charge all special requests for instructions—five in number—asked by the defendants. The charge was, therefore, entirely satisfactory to the defendants. There will be found in the record no exception to the actions or rulings of the court upon any material matter. The defendants were given a fair and impartial trial.

■ Counsel for defendant Roach urges that Roach merely accompanied Pierce as chauffeur and made no false representations of being an officer or employee acting under authority of the United States; but the record abundantly shows that he stood by and heard the defendant Pierce repeatedly make the representation that both of them were such officers. It is true that, usually, he stood by silent, while Pierce made the false representations; but the proof shows that in certain instances he did join in the conversation in such manner as to constitute a misrepresentation by more than mere silent acquiescence.

The United States Criminal Code, § 332 (18 U.S.C.A. § 550), provides:

"Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

The court holds Roach as guilty in less degree than the defendant Pierce; but nevertheless as guilty beyond reasonable doubt of the crimes for which he has been convicted.

After thoughtful deliberation upon all grounds of the motion of defendants for a new trial, no merit in their motion has been found. Accordingly, the motion for a new trial of both defendants is overruled.

Sentence will be pronounced on the several counts of the indictment, in such appropriate manner as to impose upon the defendant J. E. Pierce confinement in some penitentiary to be designated by the Attorney General of the United States, or his duly authorized agent, for the total term of twelve years; and upon the defendant E. H. Roach, a total term of five years penal servitude. Penal sentences of fines

aggregating $8,500 against J. E. Pierce, and $3,400 against E. H. Roach will also be imposed.