## GERARD v. UNITED STATES.

### No. 4743.

Circuit Court of Appeals, Seventh Circuit.

Oct. 28, 1932.

Alfred E. Roth, of Chicago, Ill., for appellant.

George E. Q. Johnson, U. S. Atty., and Owen A. West, Asst. U. S. Atty., both of Chicago, Ill.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

Appellant and Meyer I. Cohen, Harry Spivak, and Felix Rivkin, alias Felix Riban-

ov, were charged by indictment in seven separate counts. The first three counts charged said parties with having made and executed certain copper plates in the likeness of a plate designated for the printing of an obligation of the United States; the fourth count charged said parties with having said plates in their possession, custody, and control; the fifth count charged the same parties with having printed, photographed, made, and executed an engraving, photograph, print, and impression of an obligation of the United States; the sixth count charged possession of said prints, photographs, engravings, and impressions; and each of the six counts mentioned charged that the acts complained of were done unlawfully, willfully, knowingly, and feloniously, and without authority of the United States and in violation of 18 U. S. C. § 264.[1]

The seventh count charged said parties with having unlawfully, willfully, knowingly, and feloniously conspired to commit the offenses set forth in the preceding counts, in violation of 18 U. S. C. § 88.[2]

Appellant was tried separately. His motion for a directed verdict was overruled, and the jury found him not guilty as charged in the first six counts, but found him guilty of conspiracy under the seventh count. Motions for a new trial and in arrest of judgment being overruled, he was committed to the custody of the Attorney General for imprisonment.

■ There was substantial evidence submitted to support the following facts:

On the morning of March 11, 1931, appellant purchased six copper plates, size five by seven inches, from the American Steel & Copper Plate Company in Chicago. The next morning he again purchased six copper plates of the same size, and at the same place. On both of those occasions he was conveyed to said company's place of business by Spivak and Cohen in Spivak's automobile, and they remained in the car while appellant made the purchases. At the time of the second purchase, Spivak parked his car at a distance of one-half block from the place where the purchase was made; and at each purchase Cohen gave appellant the money with which to make the purchase. At the time of the first purchase, Cohen gave appellant a piece of paper on which were written a description of the plates desired and the name of a radio concern, and instructed appellant, in case he was asked for whom they were purchased, to say they were for a radio. After each purchase Spivak and Cohen conveyed appellant by automobile to his place of business.

On the afternoon of March 12, 1931, Spivak purchased two bottles of iron chloride of the company above referred to, and stated at that time that his partner had been there that morning to buy some copper plates.

At the time the second purchase of plates was made by appellant, and while he was waiting for them to be prepared, a woman stenographer of the American Steel & Copper Plate Company went to another room and telephoned the government secret service department that there was a man in the office of whom she was suspicious, and requested that department to send a representative to the company's place of business. In a few minutes two representatives of that department appeared, and found appellant in the company's office waiting for the plates. At that time there were no other automobiles

[1] 18 U. S. C., § 264 (18 USCA § 264).

"Whoever, having control, custody, or possession of any plate, stone, or other thing, or any part thereof, from which has been printed, or which may be prepared by direction of the Secretary of the Treasury for the purpose of printing, any obligation or other security of the United States, shall use such plate, stone, or other thing, or any part thereof, or knowingly suffer the same to be used for the purpose of printing any such or similar obligation or other security, or any part thereof, except as may be printed for the use of the United States by order of the proper officer thereof; or whoever by any way, art, or means shall make or execute, or cause or procure to be made or executed, or shall assist in making or executing any plate, stone, or other thing in the likeness of any plate designated for the printing of such obligation or other security; * * * or whoever shall have in his control, custody, or possession any plate, stone, or other thing in any manner made after or in the similitude of any plate, stone, or other thing, from which any such obligation or other security has been printed, with intent to use such plate, stone, or other thing, or to suffer the same to be used in forging or counterfeiting any such obligation or other security, or any part thereof; or whoever shall have in his possession or custody, except under authority from the Secretary of the Treasury or other proper officer, any obligation or other security made or executed, in whole or in part, after the similitude of any obligation or other security issued under the authority of the United States, with intent to sell or otherwise use the same; or whoever shall print, photograph, or in any other manner make or execute, or cause to be printed, photographed, made, or executed, or shall aid in printing, photographing, making, or executing any engraving, photograph, print, or impression in the likeness of any such obligation or other security, or any part thereof, * * * shall be fined not more than $5,000, or imprisoned not more than fifteen years, or both."

[2] 18 U. S. C., § 88 (18 USCA § 88).

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both."

immediately in front of the building wherein the purchases were made, and Spivak's car was parked about one-half block to the south of that building. The secret service men saw appellant come from the building and drive away with Cohen and Spivak.

On March 24, 1931, appellant was observed in company with Cohen, and on the same day, but at a different time, appellant was seen in company with Spivak.

The movements of appellant, Cohen, and Spivak, and also of the defendant Rivkin, were rather closely watched by government agents until March 27, 1931, when Spivak and Rivkin were arrested in the premises at 424 Central Park avenue. Cohen, Spivak, and Rivkin at numerous times had been observed entering and leaving those premises, but appellant had never been seen in or about there. On searching those premises, occupied by Spivak and Rivkin at the time of their arrest, the agents found copper plates with impressions of twenty, fifty, and one hundred dollar federal reserve notes, negatives, press, ink, paper, films, acids, plate molders, and chemicals, all of which were adapted for use in counterfeit activities. Two of the copper plates found were positively identified as part of those sold by the American Steel & Copper Plate Company to appellant on March 11 and 12, 1931, and upon one of these was impressed a fifty dollar note of the Federal Reserve Bank of Chicago.

On the same day that Spivak and Rivkin were arrested, Cohen was arrested at his place of business, and appellant was arrested at his home, both of which places were a considerable distance from 424 Central Park avenue. Appellant and Cohen were taken separately by the arresting officers to the premises where Spivak and Rivkin had been arrested. On the way there appellant, in answer to questions by the arresting officer, stated that he did not know Cohen, Spivak, or Rivkin; that he had never bought any copper plates from the American Steel & Copper Company; that he had never been at that company's place of business; and that he had never been in Spivak's car. Later, at 424 Central Park avenue, he admitted that he bought the copper plates at the American Steel & Copper Company, that he knew Spivak and Cohen, and that he had been in Spivak's car.

Appellant testified in his own behalf and stated that he had never participated in the counterfeiting activities in which Cohen, Spivak, and Rivkin were engaged, and that he had no knowledge that they were thus engaged. He further stated that he purchased the copper plates because Cohen had asked him to do so, and that he thought they were to be used in a radio.

The jury in this case passed upon the weight of the evidence and the credibility of the witnesses. Its province was to consider all the evidence, and determine what facts had been proven or not proven. If it met with conflicts in the evidence, its duty was to reconcile those conflicts in such manner as to believe all the testimony of all the witnesses if it could be reasonably and fairly done. If the evidence could not be so reconciled, then the jury had the right to believe that which it thought most worthy of credit, and disregard that which could not be reasonably and fairly reconciled therewith. That duty has been performed, and although the result is adverse to appellant it is supported by substantial evidence, and we have no power to change it unless there is merit in one or more of the other alleged errors.

It is contended by appellant that there was error in admitting in evidence the articles found by the officers in the search of the premises at 424 Central Park avenue. In this there was no error, because that evidence tended strongly to establish the conspiracy between Cohen, Spivak, and Rivkin, which no one connected with this case denies. Of course appellant ought not to be charged with their conduct unless and until there was substantial evidence which connected him with it. There was such evidence, as above stated, from which the jury was well warranted in finding that appellant participated in the conspiracy. He has not seen fit to bring the court's instructions before us, and for that reason we must assume that the jury was properly instructed in this respect.

Appellant further contends that there was error in refusing to strike and exclude the testimony of the arresting officers relative to appellant's denial of the facts that he was acquainted with Cohen and Spivak, that he purchased the plates, and that he was ever in Spivak's car. He bases this contention upon the fact that the officers failed to advise him, while he was under arrest and in their custody, that any statement he might make to them might be used against him, and that he was under no obligation to make any statement. There was no duress proven, and this contention is without merit. Powers v. United States, 223 U. S. 303, 32 S. Ct. 281, 56 L. Ed. 448; Wilson v. United States, 162 U. S. 613, 16 S. Ct. 895, 40 L. Ed. 1090.

During the progress of the trial, the government, without objection on the part of appellant, proved by Officer Schaetzel that Cohen, Spivak, and Rivkin, in the presence of appellant, pleaded guilty to the instant indictment in the District Court. Immediately thereafter appellant moved to strike from the record the questions and answers by which such evidence was elicited, and that the jury be instructed to disregard it. In response to that motion, the District Attorney stated in the presence of the jury: "I asked him (witness) of a matter of record. I can bring in the record if they make me do that. * * * The record here shows the other defendants entered their pleas. * * * And the other defendant is as much a part as he is. And there was no order of severance." It is insisted that the introduction of such evidence and the statement of the District Attorney were prejudicial to appellant. If the reception of such evidence was objectionable to appellant, he should have objected to its admission; and, not having done so, he cannot complain. The court, however, promptly sustained appellant's motion to strike, and instructed the jury to disregard the evidence referred to. This was all the court was asked to do, and appellant has no cause for complaint in this respect. The fact that appellant was present at that time was neither material nor proper on the theory that it was a statement made in his presence which he did not deny, for he is not required to deny or admit such statements unless he is on the witness stand. Appellant, however, could have avoided the introduction of the objectionable evidence if he had made timely objection to the question, and had requested a discussion of the matter in the absence of the jury.

Appellant contends that his rights were prejudiced in several instances by the remarks of the District Attorney in his examination of witnesses and in his statements in the presence of the jury. In every such instance the alleged error was either invited by appellant's counsel, or his objection was sustained, or it was rightfully overruled. To set out each instance would unduly and unnecessarily prolong this opinion. It is sufficient to say that in no instance where appellant claims that the court's ruling in his favor was not sufficient to purge the record of error did appellant ask to withdraw the case from the jury, and he cannot now complain of the result on account of those alleged errors. Billiter v. United States (C. C. A.) 23 F.(2d) 678; Carter v. State of Tennessee (C. C. A.) 18 F.(2d) 850; Coleman v. State, 111 Ind. 563, 567, 13 N. E. 100; Grubb v. State, 117 Ind. 277, 283, 20 N. E. 257, 725; Leach v. Ackerman, 2 Ind. App. 91, 95, 28 N. E. 216; Vannatta v. Duffy, 4 Ind. App. 168, 30 N. E. 807; Maybin v. Webster, 8 Ind. App. 547, 551, 552, 35 N. E. 194, 36 N. E. 373.

Another alleged error upon which appellant relies is the fact that the court, at the government's request, permitted witness Schaetzel to detail a conversation with Rivkin, which appellant's counsel had elicited in part. In this there was no error.

Appellant further contends that the verdict is inconsistent, in that he was acquitted of the substantial offenses set forth in the charge of conspiracy. This position is not tenable. Morris v. United States (C. C. A.) 7 F.(2d) 785; United States v. Rabinowich, 238 U. S. 78, 35 S. Ct. 682, 59 L. Ed. 1211; Williamson v. United States, 207 U. S. 425, 28 S. Ct. 163, 52 L. Ed. 278; Clune v. United States, 159 U. S. 590, 16 S. Ct. 125, 40 L. Ed. 269.

Where all the evidence is as consistent with innocence as with guilt, we are well aware that it is our duty to override a verdict of guilt; but we are convinced from the record that this is not such a case.

Judgment affirmed.