## PIERCE et al. v. UNITED STATES.
### No. 7342.

Circuit Court of Appeals, Sixth Circuit.
Dec. 16, 1936.

L. E. Gwinn and Edgar Webster, both of Memphis, Tenn., for appellants.

R. G. Draper, of Memphis, Tenn. (William McClanahan and Joseph M. Bearman, both of Memphis, Tenn., on the brief), for the United States.

Before SIMONS and ALLEN, Circuit Judges, and LEDERLE, District Judge.

SIMONS, Circuit Judge.

Convicted on seventeen counts of an indictment, each charging either false impersonation of federal officers or fraudulently obtaining money in the pretended character of such officers, in violation of section 32 of the Criminal Code (18 U.S.C.A. § 76), the appellants challenge the sufficiency of the indictment, assail the evidence as too vague and insubstantial to support a verdict, and complain of an unfair trial.

It was the theory of the government that the accused, capitalizing the great interest that the farmers of Western Tennessee had manifested in the objectives of the Tennessee Valley Authority, which was to bring to their farms cheap light and power and other advantages, represented themselves as government officials selling "T. V. A. stock" or "T. V. A. units." The defense was that the accused were engaged in a legitimate advertising campaign, selling advertising space in a country newspaper published in Huntsville, Ala.; the purpose of the advertising being to promote and insure the success of the Tennessee Valley Project and to encourage the extension of its operations in the western counties. The jury accepted the government's view as to the purport of the alleged representations, and the accused were convicted on all counts of the indictment except two charging substantive offenses and a third charging conspiracy. Pierce was sentenced to a term of twelve years in a federal penitentiary and fined $8,500. Roach was sentenced to a term of five years and fined $3,400.

Section 32 of the Criminal Code, being section 76, tit. 18, U.S.C. (18 U.S.C. A. § 76), reads: "Whoever, with intent to defraud either the United States or any person, shall falsely assume or pretend to be an officer or employee acting under the authority of the United States, or any department, or any officer of the Government thereof, and shall take upon himself to act as such, or shall in such pretended character demand or obtain from any person or from the United States, or any department, or any officer of the Government thereof, any money, paper, document, or other valuable thing, shall be." That the statute creates and describes two separate and distinct offenses has long been settled. One consists of falsely assuming or pretending to be an officer or employee under the authority of the United States and the taking upon one's self to act as such with intent to defraud, and the other consists of a false assumption or pretense with intent to defraud, and in such pretended character demanding or obtaining money from any person or from the United States. United States v. Barnow, 239 U.S. 74, 36 S.Ct. 19, 21, 60 L.Ed. 155; Lamar v. United States, 241 U.S. 103, 36 S.Ct. 535, 539, 60 L.Ed. 912.

The counts of the indictment are in series, the even-numbered counts each charging the first offense described in the statute, and the odd-numbered counts, exclusive of the first, charging the second. It is the contention of the appellants that none of the counts sufficiently charges an offense under the law. It is unnecessary to set forth their text. It is enough to say that each responds to the tests applied by the court in United States v. Barnow, supra, to the indictment there involved, and contains all of the elements of the offense charged there found to meet requirements. Applicable also to the appellant's contention is what was said in Lamar v. United States, supra: "It is, moreover, to be observed that there is not the slightest suggestion that there was a want of knowledge of the crime which was charged or of any surprise concerning the same, nor is there any intimation that any request was made for a bill of particulars concerning the details of the offense charged. Under this situation we think that the case is clearly covered by § 1025, Revised Statutes [18 U.S.C.A. § 556]." This court has said: "The certainty required in an indictment is only such as will fairly inform the defendant of the crime intended to be alleged, so as to enable him to prepare for defense and so as to make the judgment a complete defense to a second prosecution for the same offense." Bettman v. United States, 224 F. 819, 826 (C.C.A. 6). Such certainty is here present. While the phrase "T. V. A. units" might, in another environment, have required some explanation, perhaps in this none was necessary. At least none was requested in the mode provided.

Another contention is that the Tennessee Valley Authority Act of 1933 (48 Stat. 58 [16 U.S.C.A. § 831 et seq]) creates a corporation that is an entity, separate and distinct from the Federal Government, and that its employees are not officers or agents of the United States within the purview of section 32. United States v. Strang, 254 U.S. 491, 41 S.Ct. 165, 65 L.Ed. 368, and United States ex rel. Skinner & Eddy Corp. v. McCarl, 275 U.S. 1, 48 S.Ct. 12, 72 L.Ed. 131. The holding in the above cases is that the Emergency Fleet Corporation was not a department of the government. The authorities are, however, inapplicable. The allegations of the indictment are broader than the contention implies, and to the allegations the proofs respond. The defendants were not charged with representing themselves as agents or employees of the Tennessee Valley Authority. They are charged with having assumed or pretended to be representatives of the government.

Government witnesses testified that Pierce in the presence of Roach, and with his apparent though tacit approval, claimed to be a representative of the government selling "T. V. A. units," or "stock in the T. V. A.," or an "interest" therein, and that the government would match any contribution made by citizens of the community. Undoubtedly there was confusion in much of this testimony, and many contradictions, but we must reject the contention that it is intrinsically destitute of probative value as the basis of a finding of false impersonation. We have declared too often to require citation that we will not consider the weight of evidence or the credibility of witnesses, and no logical reason is suggested why verbal declarations may not constitute a false pretending or impersonation equally with the exhibition of a counterfeited badge or a false certificate of authority. Likewise must be rejected the contention that the representations if made were too absurd and irra-

tional to constitute a false pretense, and that to come within the statute they must be such as would be calculated to deceive persons of ordinary intelligence in the absence of a showing that they were addressed to illiterates or those of subnormal mental capacity. We find nothing in the statute that confines its prohibitions to those representations or pretenses which are sufficiently convincing to deceive only those least gullible. Indeed, the purpose of the statute is broader than mere protection of the credulous. As was said in United States v. Barnow, supra: "In order that the vast and complicated operations of the government of the United States shall be carried on successfully and with a minimum of friction and obstruction, it is important—or, at least, Congress reasonably might so consider it—not only that the authority of the governmental officers and employees be respected in particular cases, but that a spirit of respect and good will for the government and its officers shall generally prevail. And what could more directly impair this spirit than to permit unauthorized and unscrupulous persons to go about the country falsely assuming, for fraudulent purposes, to be entitled to the respect and credit due to an officer of the government? It is the false pretense of Federal authority that is the mischief to be cured."

Of more serious import is the complaint that the trial was not fairly conducted, and that conviction was had otherwise than in accordance with the law and the evidence, for: "A trial in court is never * * * 'purely a private controversy * * * of no importance to the public.' The state, whose interest it is the duty of court and counsel alike to uphold, is concerned that every litigation be fairly and impartially conducted and that verdicts of juries be rendered only on the issues made by the pleadings and the evidence." New York Central R. R. Co. v. Johnson, 279 U.S. 310, 318, 49 S.Ct. 300, 303, 73 L.Ed. 706.

The District Judge, in his opinion denying the motion for new trial (13 F.Supp. 301, 303), thus catalogues the acts of the United States Attorneys claimed to transgress the bounds of fairness and to appeal to prejudice: "Conveying to the jury by improper questions the suggestion that defendant Pierce had been tried in the federal courts of Alabama; that he could not obtain credit in his home town of Huntsville, Ala., or procure reputable witnesses who resided there to testify to his good character; that United States Senator Bankhead of Alabama, after interviewing Senator McKellar of Tennessee, could not be procured as a character witness for defendant Pierce; that Pierce had transferred property to his wife and son in fraud of creditors; that he had been frequently detained and investigated by law enforcement officials; and that he was under indictment in the state courts of Mississippi and was a fugitive from justice of that state."

It is true that by section 269 of the Judicial Code, as amended, 28 U.S.C. § 391 (28 U.S.C.A. § 391), not every technical error, defect, or exception which does not affect the substantial rights of the parties is ground for reversal, and if upon examination of the entire record substantial prejudice does not appear, the error, if it exists, must be regarded as harmless. Haywood v. United States, 268 F. 795, 798 (C.C.A. 7); Rich v. United States, 271 F. 566, 569, 570 (C.C.A. 8). The inquiry, however, must always be as to whether in view of the whole record the impression conveyed to the minds of the jurors by irrelevant and prejudicial matter is such that the court may fairly say that it has not been successfully eradicated by the rulings of the trial judge, his admonition to counsel, and his instruction to the jurors to disregard it. Sometimes a single misstep on the part of the prosecutor may be so destructive of the right of a defendant to a fair trial that reversal must follow, as in Pharr v. United States, 48 F.(2d) 767 (C.C.A. 6). At other times transgressions may be so slight that if promptly corrected and their repetition avoided the court may not say that the jury was prejudiced, though often the mere cumulative effect of a course of improper conduct compels reversal. Volkmor v. United States, 13 F. (2d) 594 (C.C.A. 6); Frantz v. United States, 62 F.(2d) 737 (C.C.A. 6).

To those with any breadth of experience in the trial of criminal cases it must be clear that suggestions, especially when often repeated, that a defendant has earlier been in trouble with the law, that he has elsewhere or previously been indicted, that he has been frequently detained and investigated by law enforcement officers, and that he is a fugitive from justice, are so prejudicial that no admonition from the court that they be disregarded, however promptly and forcibly made, may

be safely relied upon to free the minds of jurors from the impression that the defendant is of bad character and capable of committing the crime charged. They may completely overthrow the presumption of innocence. Of what relevancy to the issues were the facts, if they could have been established, that Pierce had transferred property to his wife and son in fraud of creditors, or that he could not obtain credit in his home town, it is difficult to see. Why these matters should have been inquired into by the United States attorney, or why the inquiry should not have been promptly and vigorously checked by the District Judge, is likewise difficult of comprehension. The long colloquy in the presence of the jury set forth fully in the opinion below dealing with letters and telegrams passing between Senator Bankhead and Senator McKellar certainly had nothing to do with the issues, and the reference by the United States attorney to the undisclosed contents of a letter from the one Senator to the other which the assistant district attorney "had tried to get into the record when he was cross-examining defendant Pierce and the witness Carmichael" carried such implication that the exclusion of the letter from evidence may well have been more disastrous to the defendants' case than its erroneous admission.

It is quite true that the court ruled correctly upon all objections interposed by the defendants, but in most instances the ruling came after the mischief had been done, and it was clearly a case where the misconduct of the prosecutors was neither slight nor confined to a single instance, but so pronounced and persistent that the cumulative effect upon the jury cannot be disregarded as inconsequential. Berger v. United States, 295 U.S. 78, 89, 55 S.Ct. 629, 632, 79 L.Ed. 1314. As was said in that case: "The trial judge, it is true, sustained objections to some of the questions, insinuations and misstatements, and instructed the jury to disregard them. But the situation was one which called for stern rebuke and repressive measures and, perhaps, if these were not successful, for the granting of a mistrial. It is impossible to say that the evil influence upon the jury of these acts of misconduct was removed by such mild judicial action as was taken." It has sometimes been said that where the evidence of guilt is overwhelming, error otherwise to be noted is to be disregarded, Fitter v. United States, 258 F.

567, 573 (C.C.A. 2), and on this ground among others the District Judge denied the motion for new trial. Having seen and heard the witnesses, he was convinced of the guilt of both defendants. With all due deference to the opinion of the trial judge, who had superior opportunities for learning the truth, we think upon examination of the whole record, and this notwithstanding our conclusion that there was substantial evidence to carry the case to the jury, that the characterization of the government's evidence as overwhelming is perhaps too strong. Some of the offenses were proved by but a single witness. Whatever may be said of the guilt of Pierce, the case against Roach was plainly close, and required the aid of the abetting statute, section 332, Criminal Code (18 U.S.C.A. § 550), without which it is doubtful that his guilt should have been submitted to the jury.

The point was made below that the improper conduct of the prosecuting attorneys was waived by failure of the defendants to move for a mistrial, and reliance is placed upon Chadwick v. United States, 141 F. 225 (C.C.A. 6); Sparks v. United States, 241 F. 777 (C.C.A. 6); Carter v. Tennessee, 18 F.(2d) 865 (C.C.A. 6); and Dunlop v. United States, 165 U.S. 486, 487, 17 S.Ct. 375, 41 L.Ed. 799. We are not here so much concerned with improper argument springing from the heat and enthusiasm of advocacy, as we are with what appears to have been a studied effort to inject into the case irrelevant and prejudicial matter for the purpose of influencing the verdict, and its continued repetition after adverse rulings. Indulgence was designed rather than inadvertent, and an improper purpose its only explanation. That it was intended to prejudice the jury is sufficient ground for a conclusion that in fact it did so. Similar latitude in respect to irrelevant matter permitted to counsel for the defendants neither vindicates nor palliates the license assumed by the prosecutors, nor lessens its destructive effect upon the fairness of the trial. Above and beyond all technical procedural rules, designed to preserve the rights of litigants, is the public interest in the maintenance of the nation's courts as fair and impartial forums where neither bias nor prejudice rules, and appeals to passion find no place, though the government itself be there a litigant. "The United States Attorney is the representative not of an ordinary par-

954

ty to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer." Berger v. United States, supra. "Public interest requires that the court of its own motion, as is its power and duty, protect suitors in their right to a verdict, uninfluenced by the appeals of counsel to passion or prejudice." N. Y. Central R. Co. v. Johnson, supra, 279 U.S. 310, 318, 49 S.Ct. 300, 73 L.Ed. 706. Where such paramount considerations are involved, procedural niceties will not preclude a court from correcting error.

Since the case must be retried, no consideration will be given to the alleged abuse of discretion by the court below in denying the motion for new trial, based on newly discovered evidence.

Judgment reversed, and case remanded for retrial, pending which appellants will be admitted to reasonable bail.