**SCHINO** et al.

v.

**UNITED STATES.**

No. 13375.

United States Court of Appeals,
Ninth Circuit.

Dec. 2, 1953.

Rehearing Denied Jan. 4, 1954.

Writ of Certiorari Denied
April 5, 1954.

See 74 S.Ct. 627.

A. J. Zirpoli, C. Harold Underwood, San Francisco, Cal., for appellant Schino.

Morgan V. Spicer and H. R. Whiting, San Francisco, Cal., for appellant Hartmann.

M. Mitchell Bourquin, Spec. Asst. to U. S. Atty., Thomas W. Martin, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, and ORR and POPE, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal by two of three defendants from a judgment convicting them of conspiring to defraud the government by impairing its process of collecting and assessing federal taxes.

The parties have assigned many errors of the trial court for this appeal. These may be summarized as follows: (1) Sufficiency of the indictment; (2) denial of request for a bill of particulars; (3) refusal of a continuance because of the approaching pendency of hearings before the King sub-committee which might have bearing on many matters involved in the trial; (4) improper remarks of prosecuting attorney in argument to jury; (5) sufficiency of the evidence to support the verdict; (6) admissibility of evidence as to similar transactions; and (7) instructions to the jury.

The essence of the scheme, as developed by the government's evidence, is as follows: Gertrude Jenkins, a convicted abortionist, was in tax difficulties. She contacted appellant Hartmann who told her that he could get it "fixed" for $5,000 so that she would not be criminally or civilly prosecuted. Hartmann contacted defendant Mooney (not an appellant), Chief Field Deputy of the Collector of Internal Revenue for the State of Nevada, and asked him if he could "fix" appellant Schino, Chief Field Deputy of the Collector of Internal Revenue for the First District of California. The answer was affirmative. Mooney later took Hartmann to meet Schino. Schino was, as he had done in other cases, to compel his subordinates in the San Francisco office to tamper with and suppress the assessment and penalty against Mrs. Jenkins. In exchange, Mrs. Jenkins was to pay $5,000, and did pay it, for worthless shares of stock in the Mountain City Consolidated Copper Co., a corporation controlled by Mooney. Schino and Hartmann were to share in this $5,000. The failure of the scheme was not the fault of the conspirators, but rather resulted because of a contemporaneous investiga-

tion of the Internal Revenue Bureau then under way.

(A) The Indictment:

 The indictment charges appellants and one Patrick Mooney—

"* * * did * * * conspire together, and with Gertrude Jenkins, also known as Ann Scott, and others to said Grand Jury unknown, with the intent and purpose to defraud the United States in the exercise of its governmental powers by impairing, obstructing and interfering with the lawful function of a Department of the United States, to-wit, the Bureau of Internal Revenue of the Treasury Department, by attempting corruptly to influence and prevent said Bureau of Internal Revenue from proceeding civilly against said Gertrude Jenkins and prosecuting her criminally for income taxes due, owing and unpaid by her to the United States in the sum of $45,000.00, approximately, for the calendar tax years of 1944 and 1945; * * *."

Appellants admit there was an overt act but attack the indictment in that it does not state the essential facts constituting the offense charged, but merely the legal conclusions of the pleader. The indictment is not defective in that regard. It charges that the appellants "conspired" (i. e., "agreed") to defraud the government (unlawful object) by attempting corruptly to influence and prevent the Bureau of Internal Revenue from proceeding against Gertrude Jenkins (the means). This indictment gives the gist of the offense of conspiracy, the agreement to commit an unlawful act and the means by which that agreement was to be achieved. United States v. Falcone, 311 U.S. 205, 210, 61 S.Ct. 204, 85 L.Ed. 128. "The particularity of time, place, circumstances, causes, etc., in stating the manner and means of effecting the object of the conspiracy for which [appellants] contend, is not essential to an indictment." Glasser v. United States, 315 U.S. 60, 66, 62 S.Ct. 457, 463, 86 L. Ed. 680.

Appellant Hartmann argues that the prosecuting of either civil or criminal actions against taxpayers is not a function of the Bureau of Internal Revenue but rather is a function of the Department of Justice. 28 U.S.C. § 507. It is argued that since the indictment charged interference with a function not attributable to the department indicated, no crime has been charged. The short answer to this contention is that no suit regarding taxes can be commenced unless the Commissioner of Internal Revenue, the head of the Bureau, authorizes it. 26 U.S.C. § 3740. Thus, if influence is successfully brought to bear upon the Commissioner through his underlings, a suit will be prevented.

Hartmann then argues that even if prosecution of suits be a function of the Bureau, there is no allegation that the Bureau intended so to prosecute or that the parties knew of such intention if it existed, so that the indictment is defective. This contention is also without merit. The indictment is sufficient if it alleges that an unlawful object was sought, whether or not such unlawful object was attained. United States v. Manton, 2 Cir., 107 F.2d 834, certiorari denied, 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012.

(B) Denial of the Bill of Particulars:

 Appellants moved for bills of particulars which were denied. In testing the validity of this denial, it must be borne in mind that the trial court's action on a bill of particulars is discretionary and should not be disturbed, in the absence of an abuse of that discretion. Wong Tai v. United States, 273 U.S. 77, 82, 47 S.Ct. 300, 71 L.Ed. 545; Himmelfarb v. United States, 9 Cir., 175 F. 2d 924, 935.

Appellant Schino's attorney, in making an objection to the admission of evidence, stated that he did so "partly on my understanding of what the facts will be"; and further stated "the indictment in this case specifically outlines the nature of the conspiracy." As stated by the district court in its opinion below: "* * * in a trial lasting three weeks, the defend-

ants had ample opportunity, in the event that they were taken by surprise, to ask for a continuance, so that they might prepare to meet the unexpected evidence. No such continuance, however, was requested. As a matter of fact, the defendants at no stage of the proceedings were taken by surprise, nor do they now make such a claim." Where the record thus shows that the defendants were not taken by surprise in the progress of the trial or that their substantial rights have not been prejudiced in any way by the denial of the bill of particulars, there has been no abuse of discretion. Wong Tai v. United States, supra.

**(C) Refusal of Continuance of the Date for Trial.**

██ A motion was made on January 24, 1952, to postpone the trial in this cause which was scheduled to commence on February 11, 1952. The ground of the motion was that the Subcommittee on the Administration of the Internal Revenue Laws of the Ways and Means Committee of the House of Representatives of the United States, popularly known as the King Subcommittee, was scheduled to commence hearings on February 4, 1952, on the operations of the San Francisco offices of the Internal Revenue Bureau. Because two of the defendants were officers of the Bureau and because the King Subcommittee intended to investigate, according to newspaper reports, the Mountain City Consolidated Copper Company of Nevada, a concern which allegedly was controlled by Bureau officials who sold its worthless stock at high prices to persons for whom they had done favors, appellant Schino sought the continuance, in which motion appellant Hartmann joined. This continuance was denied.

Appellants assert that the denial of the continuance was highly prejudicial error. They refer not only to the facts above asserted, but also seek to have the court take judicial notice of widespread newspaper and radio coverage relating to the local Bureau "scandals," not contained in the record. Principal reliance is placed upon the case of Delaney v. United

States, 1 Cir., 199 F.2d 107. In that case, it was held prejudicial error for the court to proceed to trial where *prior thereto* the King Subcommittee had heard evidence relating to Delaney's affairs which ranged far beyond the scope of the indictment and was highly damaging. These hearings resulted in widespread national publicity adverse to Delaney which extended up to and beyond the time of trial. The court found in detail the mass of newspaper comment and held that by the release prior to trial of such adverse publicity by a branch of the United States (albeit not the prosecuting branch), the United States, as the party plaintiff, "must accept the consequence that the judicial department, charged with the duty of assuring the defendant a fair trial before an impartial jury, may find it necessary to postpone the trial until by lapse of time the danger of the prejudice may reasonably be thought to have been substantially removed." 199 F.2d at page 114.

In their argument here, attempting to show prejudice or the lack thereof, all parties have alleged facts concerning alleged newspaper comment outside the record. Both appellants cited the denial of the continuance of the date of trial as a ground for a new trial, but the argument on the motion was not reported and the district judge did not refer to this contention in his ruling on the motion. Appellants contend that the state of the record is such that the affidavit of Schino's counsel, joined in by Hartmann, being untraversed, must be accepted as true. The only report of a newspaper comment shown by the record is an excerpt from an article appearing in the San Francisco Examiner of January 5, 1952, of which no complaint was made in appellants' briefs. Instead, the briefs refer to several newspaper articles not put in evidence, of which we cannot take notice.

In this state of the record, the comment of Chief Judge Swan, writing for the court, in United States v. Moran, 2 Cir., 194 F.2d 623, at page 625, is apropos. "Neither the Committee's report

nor the newspapers' comments on it are in the record, so that we cannot judge whether they supplied any basis for counsel's apprehension." Compare Delaney v. United States, supra, where the motion for a continuance was based upon an "affidavit with accompanying exhibits" showing in detail the adverse newspaper comment. 199 F.2d at pages 111, 112.

(D) Prosecutor's Argument to Jury:

■■ In his closing argument to the jury, the prosecuting attorney made the following statement:

"Let me say this to you on the matter: You've got to think about this, this is your business just as much as it is mine, and I am beginning to think it is a good deal of the business of all of us to get started sometime to get into this mess, and the longer you put it off the worse it is going to get. If those poor little people up in that revenue office up there that you saw march in front of you in the court room and confess they were pushed around by this man——

"Mr. Zirpoli: I think that is an improper plea.

"Mr. Bourquin: I don't think it is.

"Mr. Zirpoli: I think it is.

"The Court: Proceed.

"Mr. Zirpoli: All right.

"Mr. Bourquin: If those poor people like the Christopherson girl, poor little Wulff, and poor McGowan, and the rest of them [lower echelon employees under Schino] will see that you ladies and gentlemen, out in the open under no obligation to these people, not afraid of these characters, if they are going to find you will wink at this thing and put it aside, they are going to lose all hope, they are not going to rehabilitate themselves, and you are not going to be fair with them to do that. This isn't your work, but it isn't my work any more than it is yours, this

work, and you know that I never prosecuted a criminal case, I spent my time for ten years defending the Government in cases, but I regard this as a defense of the Government and the people and to defend those little people that have been pushed around by bullies thinking the department is run for themselves and for their own ends; Mooney for his stock, and Schino for his family, or whatever he wants, and Hartmann for stock, or anything else. You have got to make it, look at, to take notice of those things, you've got to fight those things as you heard in this Court if you are going to expect it to stop.

"Now, I make that——I leave the case with you in that vein. I am very serious about it. I will extend to you now my appreciation for the patience you have shown in standing here talking to you longer than I assured you I would in the first place, and I leave the case and the determination of it to your good judgment."

Appellant Schino contends that this impassioned appeal to public responsibility in a period of great national and local concern was plainly unwarranted and clearly injurious, since it denied the accused the safeguard of a fair trial and constituted reversible error.

Appellant is again relying upon the publicity background of the trial without having in the record anything to bear out the alleged prejudicial publicity. The prejudicial character of this argument to the jury must be determined from the record itself, a court of appeals may not take cognizance of evidence not in the record as transmitted from the district court. Pacific R. R. v. Ketchum, 101 U.S. 289, 25 L.Ed. 932; Siano v. Helvering, 3 Cir., 79 F.2d 444, 446; Axelrod v. Osage Oil & Refining Co., 8 Cir., 29 F.2d 712, 716.

This criticized argument of the government had some reference to the evidence in the case. There was evidence tending to show that on occasions Schino

had used the power of his position to compel his subordinates to suppress the assessment of taxes and penalties against favored taxpayers. It was made in reply to the argument of Schino's counsel in which he tried to picture Schino as an officer of the Bureau who was doing his duty and who was not involved in any wrongdoing, and thus invited a rebuttal argument of this nature. An argument to the jury which is based upon the evidence or upon reasonable inferences therefrom, or which, even though otherwise improper, is in reply to such an argument as made by Schino's counsel, is proper. Ochoa v. United States, 9 Cir., 167 F.2d 341, 345; Springer v. United States, 9 Cir., 148 F.2d 411, 414.

(E) The Sufficiency of the Evidence:

■■■■ Appellants each assert that, as to himself, the evidence is insufficient to support the verdict. In determining this question, we must consider the evidence in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 68, 62 S.Ct. 457, 86 L.Ed. 680; Woodard Laboratories v. United States, 9 Cir., 198 F.2d 995. Viewed in this light, the state of the evidence is such that a juror's reasonable mind *"could* find that the evidence excludes every reasonable hypothesis but that of guilt". In such a situation, the case must be submitted to the jury, and their decision is final. Remmer v. United States, 9 Cir., 205 F.2d 277, 287–288, and cases cited. The theory upon which appellants rely, that in a circumstantial evidence case a conviction cannot be supported if the evidence is as consistent with innocence as with guilt, has been laid to rest in this circuit by the Remmer case, at least where, as here, the question arises on a motion for a judgment of acquittal.

(F) The Contention That Excluded Evidence Nevertheless So Prejudiced the Jury that the Case Should Be Reversed.

■■■■ In an offer of proof, the prosecution claimed that it intended to show by the testimony of one Dorothy Pennington, Henry Robinson, and Lila Campbell, that appellant Schino had bragged to Dorothy Pennington's former husband that he had saved her a lot of money by manipulations within the Bureau. The court permitted the prosecution to put Mrs. Pennington on the stand because the offer of proof tended to show that her evidence would tend to prove that Schino corruptly attempted to influence and prevent the Bureau from proceeding civilly or criminally against another taxpayer. The evidence which was put in showed that Dorothy Pennington had obtained a favorable tax settlement without having been prosecuted and tended to establish that Schino had bragged that he had done her a favor. However, the court after colloquy with counsel found that the actions shown to have been committed by Schino were just as compatible with innocence and fair and proper dealing as they could be with illegal or criminal dealing.

On the morning following this testimony when it was fresh in the jury's mind and as soon as the jury assembled the court gave its following instruction to disregard the testimony of these three witnesses:

"The Court: Now, ladies and gentlemen of the Jury: There has been heretofore admitted in evidence certain testimony of three witnesses, namely Lila Campbell, Henry Robinson and Dorothy Pennington. And you will recall that those witnesses testified to their acquaintance with the defendant Schino and to the tax affairs of the Saf-T-Step Company. It is the Court's belief and conclusion that the testimony of those three witnesses in its entirety is of no materiality in this case, and I have granted a motion to strike the testimony of those three witness[es]. The testimony of Lila Campbell, Henry Robinson and Dorothy Pennington is stricken in toto, and you ladies and gentlemen are to entirely disregard that testimony that is stricken and you are to treat it as if you had never heard it. It

has no place and no factor in this case."

The excluded evidence came after the bulk of the prosecution's case was in and the instruction came after the prosecution's case was concluded. To a jury of ordinary competence it was made clear that they were to disregard it.

Furthermore, coming at the end of the government's case, the defendants could have moved immediately for a mistrial on the ground that despite the granting of the motion to exclude the testimony, its effect was so prejudicial that the jury could not fairly consider the other evidence offered. Instead, the defendants accepted the excluded evidence as not of a character to warrant a mistrial and confined themselves solely to a motion for a directed verdict on the claimed *insufficiency* of the evidence and of the indictment. Thus even had the excluded evidence been thought prejudicial, the failure to move for a new trial caused the time and effort of the court, counsel, and witnesses *of the seven days* from the presentation of this evidence to the bringing in of the verdict.

Thereafter, no motion for a mistrial was made at the close of the case, nor indeed was the subject of the prejudicial effect of the excluded evidence even remotely suggested *at any time during the trial*. Clearly the attorneys for the defense when trial keen to any adverse effect did not regard the excluded evidence as prejudicial and treating its presentation and exclusion as within Rule 52(a), Fed.Rules Crim.Proc. 18 U.S.C.A.

"Rule 52. Harmless Error and Plain Error

"(a) Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

Obviously, there was no such overwhelming prejudice that it should be considered at any stage of the proceedings as in Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557, where in fact the court's errors were objected to at the trial.

The judge properly thought so when with the "after look of a Monday morning quarterback" the prejudice was first mentioned in the denied motion for a new trial. It is a clear case where the error of admission of irrelevant evidence is cured by an instruction to the jury to disregard it. Metzler v. United States, 9 Cir., 64 F.2d 203; Cavness v. United States, 9 Cir., 187 F.2d 719, 722, certiorari denied, 341 U.S. 951, 71 S.Ct. 1019, 95 L.Ed. 1374. To hold otherwise would overrule these cases to the confusion of all the circuit's trial judges.

This conclusion is further supported by the authorities of other circuits. The failure to move for a mistrial and the allowance of the week's further proceeding amounts to a waiver of the afterthought contention as was held by the Sixth Circuit in Carter v. Tennessee, 18 F.2d 850, 853, as follows:

"The general rule is clearly that such 'improper argument of a prosecutor is no ground for reversal, where the jury is explicitly directed to disregard it.' Robilio v. United States, 6 Cir., 291 F. 975, 986. See, also, Copeland v. United States, 55 App.D.C. 106, 2 F.2d 637. And where, as here, it must be assumed that the court did reprove counsel and properly instruct the jury at the time, such prejudice as was not thereby removed, or could not be removed by such instruction, was, we think, waived by the failure of the defendant to move for a mistrial. He should not thereafter be permitted to apparently consent to the continuance of the trial, which could presumably be discontinued only upon his motion after the jury had been sworn and he once placed in jeopardy, thus taking his chance of a favorable verdict, and if the verdict be 'guilty' then assert it was founded to a material extent upon misconduct of opposing counsel. Cf. Levin v. United States, 9 Cir., 5 F.2d 598, 602 [on waiver of even constitutional rights]."

In this that court follows this holding in Billiter v. United States, 6 Cir., 23 F. 2d 678, 679 and in Pharr v. United States, 6 Cir., 48 F.2d 767, 770.

The Sixth Circuit did not overrule these prior decisions in Pierce v. United States, 86 F.2d 949; United States, D.C., 13 F.Supp. 301, a case of overwhelming prejudice as in the Kotteakos case, where instead of respecting the court's rulings the prosecution continued repeatedly to ignore it, as stated, 86 F.2d at page 952:

"Conveying to the jury by improper questions the suggestion that defendant Pierce had been tried in the federal courts of Alabama; that he could not obtain credit in his home town of Huntsville, Ala., or procure reputable witnesses who resided there to testify to his good character; that United States Senator Bankhead of Alabama, after interviewing Senator McKellar of Tennessee, could not be procured as a character witness for defendant Pierce; that Pierce had transferred property to his wife and son in fraud of creditors; that he had been frequently detained and investigated by law enforcement officials; and that he was under indictment in the state courts of Mississippi and was a fugitive from justice of that state."

Other circuits hold the same as to the waiver of such error by failing to move for a mistrial. See Webb v. United States, 10 Cir., 191 F.2d 512, 516; McGuinn v. United States, 89 U.S.App.D.C. 197, 191 F.2d 477, 479; Jamerson v. United States, 7 Cir., 66 F.2d 569, 572; Gerard v. United States, 7 Cir., 61 F.2d 872, 875.

The case is entirely different from that of United States v. Sansone, 2 Cir., 206 F.2d 86, 88. There strenuous motions were made to exclude or strike repeated prejudicial statements of the prosecution and the trial court instead of granting them, as here, denied them after which, for a week, the government's case was put in with the jury instructed the evidence was *not* prejudicial. At the end of that week, the trial court reconsidered its decision and ordered the evidence stricken from the record and instructed the jury to disregard it. The defendants interposed what the court of appeals termed a "motion for a new trial" at this point. This motion, made during the course of the trial, was in fact and effect a motion for a mistrial, and preserved the issue for consideration by the court of appeals.

Nor is it like our case of Wolcher v. United States, 9 Cir., 200 F.2d 493, 499. There, unlike the instant case with no error claimed in the trial, there were six errors of the trial court stated in detail in the opinion and other errors committed, the cumulative effect of all of which was held sufficient to prejudice the jury.

The government introduced evidence relating to the so-called "Par Soap Company deal." This evidence tended to show that Schino had brought pressure to bear upon his subordinates to juggle the Bureau's books so that it would appear that the Par Soap Co. had paid its taxes on time. This evidence was clearly admissible to show common intent or design on the part of Schino, especially in view of the fact that the transaction occurred a short time prior to the Jenkins transaction. Henderson v. United States, 9 Cir., 143 F.2d 681, 683.

Appellants' other objections to evidence admitted have been examined and found to be without merit. It should be borne in mind that in a conspiracy case wide latitude is allowed in presenting evidence and it is within the discretion of the trial court to admit evidence which even remotely tends to establish the conspiracy charged. Nye & Nissen v. United States, 9 Cir., 168 F.2d 846, 857, affirmed 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919.

(G) Instructions to the Jury:

 Appellant Hartmann asserts that the court erred in failing properly to instruct the jury on the meaning of the term "conspiracy." Although no exception was taken to the instructions, see Rule 30, Federal Rules of Criminal

Procedure, the failure of the court to give an instruction on an essential point of law is plain error which may be noticed under Rule 52(b), Federal Rules of Criminal Procedure. Samuel v. United States, 9 Cir., 169 F.2d 787, 793.

The instruction given told the jury, in essence, that the term "conspiracy" as applied to this case meant two or more persons acting pursuant to an agreement to impair, obstruct, or defeat the lawful function of the United States Government by dishonest means. Hartmann has not pointed out in what respect this definition is insufficient, and we can find none.

In addition to the specifications of error discussed above, both parties have assigned the failure of the court to grant their motions for a new trial. Inasmuch as these motions were based on the above specifications of error, there is nothing left to consider concerning the denial of the new trial.

The judgments are affirmed.