UNITED STATES of America, Plaintiff-Appellee

v.

Edward J. DONOVAN, Defendant-Appellant.

No. 14410.

United States Court of Appeals Seventh Circuit.

Nov. 3, 1964.

Rehearings Denied Jan. 4, 1965.

Before DUFFY, KNOCH and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

Edward J. Donovan, defendant-appellant, prosecutes this appeal from his conviction, following a jury trial in the District Court, on a multiple count [1] indictment for violation of 29 U.S.C.A. § 186(b).

Counts 2 through 47 concern payments of money alleged to have been received and accepted by the defendant during each of the calendar months of the year 1958, and in March 1959, from United Film Carriers, Inc.[2] The period covered by such counts antedates the September 14, 1959, amendment of Section 186. In so far as pertinent to the issues presented by this appeal, these counts charge [3] in substance that during all of the period involved United was an unincorporated association of named persons and firms engaged in the motion picture film delivery business, an industry affecting commerce; United was the agent of said named employers; both United and its member employers employed members of Local 755,[4] a labor organization; and that the defendant was an official of Local 755 and a representative of the employees employed by United and its member employers.

Counts 48 through 73 concern similar payments alleged to have been received and accepted by the defendant on dates in 1959 and 1960, which are subsequent to the 1959 amendment to Section 186, and incorporate by reference pertinent paragraphs of Count 1 but omit the allegation that United was the agent of the named employers. Count 74 differs from Counts 48 through 73 only in that a subsequent 1960 date, and receipt and acceptance of an automobile rather than a payment of money, are alleged.

George F. Callaghan, Joseph M. Jacobs, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., David Philip Schippers, Jr., Chicago, Ill., John Peter Lulinski, John Powers Crowley, Asst. U. S. Attys., of counsel, for appellee.

1. Count 1 was dismissed before trial on the remaining 73 counts.

2. Hereinafter referred to as "United".

3. By incorporating by reference the first six paragraphs of Count 1.

4. The Film, Radio, Television, Orchestra, Studio, Theatrical, Exhibition, Amusement Park and Sound Truck Chauffeurs, Helpers and Warehousemen, Local Union 755, International Brotherhood of Teamsters.

**406**

The defendant was sentenced to imprisonment for a period of one year on each of Counts 2 through 47, said sentences to run concurrently; to imprisonment for one year on each of Counts 48 through 73, said sentences to run concurrently with each other and consecutively to the sentence imposed on Counts 2 through 47; and to imprisonment for one year and a fine of $5,000 on Count 74, the sentence of imprisonment to run consecutively to the sentence imposed on Counts 48 through 73.

The defendant predicates his request for reversal of the judgment order of conviction and sentence upon contentions which include his assertion the trial court committed reversible error in denying his motions assailing the indictment as not, in any of its counts, charging a crime; the insufficiency of the evidence to support a conviction on any count, including that arising from failure of the government to overcome the application of the employment exception contained in § 186(c); the charges sought to be proved constituted, in any event, but one offense rather than seventy-three; failure to properly restrict the scope of the re-direct examination of a government witness; error in the giving and refusal to give instructions; and prejudicial misconduct of the prosecutor in the course of his argument in summation. Some of these contentions present more than one facet and encompass subsidiary arguments advanced in support thereof. We elect to limit this opinion to a detailed discussion of only those factors and arguments which after deliberate consideration we have found to merit expository analysis and to require comment.

The statutory provision upon which Counts 2 through 47, which counts encompass only pre-September 1959 status and conduct, are grounded provided that:

"(b) It shall be unlawful for any representative of any employees who are employed in an industry affecting commerce to receive or accept, or to agree to receive or accept, from the employer of such employees any money or other thing of value."

The section of the statute (29 U.S.C.A. § 186) of which the above quoted prohibition was a part was amended September 14, 1959, so as to provide in pertinent part as follows:

"(a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, advisor, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

"(1) to any representative of any of his employees who are employed in an industry affecting commerce; or

"(2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; or

"(3) to any employee or group or committee of employees of such employer employed in an industry affecting commerce in excess of their normal compensation for the purpose of causing such employee or group or committee directly or indirectly to influence any other employees in the exercise of the right to organize and bargain collectively through representatives of their own choosing; or

"(4) to any officer or employee of a labor organization engaged in an industry affecting commerce with intent to influence him in respect to any of his actions, decisions, or duties as a representative of employees or as such officer or employee of such labor organization.

"(b) (1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing

of value prohibited by subsection (a) of this section."

The amendment, for the first time, expressly brought an "association of employers", as such, within the ban of the activities denied employers. The amendment, among other things, had the effect of measuring the prohibitions of paragraph (b) by reference to the conduct proscribed by paragraph (a) as applied to one who was the solicitor or recipient of the forbidden payment, loan, etc. In view of the dates alleged therein, Counts 48 through 74 of the indictment must find their basis in the provisions of the statute as so amended.

■ We perceive no merit to defendant's contention that the express inclusion of "association[s] of employers", as such, by the 1959 amendment demonstrates the failure of Counts 2 through 47 to charge a crime—such counts relating as they do, to pre-September 1959 conduct—and that the convictions thereunder are invalid as being *ex post facto.* In Counts 2 through 47 it is alleged United was an association of employers but it is additionally alleged it was the agent of such member employers and also an employer of Local 755 members in its own right. And, the term "employer" as used in § 186(b) prior to its amendment was defined (29 U.S.C.A. § 152(2)) as including "any person acting as an agent of an employer, directly or indirectly, * * *".

■■ Defendant's supplemental motion to dismiss the indictment which was denied, assailed Counts 48 through 74 as violative of the Sixth Amendment for failure to apprise the defendant of the nature and cause of the accusation against him. In its brief the government recognizes that the amended § 186, upon which Counts 48 through 74 are grounded, in its "subsection (a) lists several specific classes that are forbidden to pay, lend or deliver any money or thing of value to any of the individuals, organizations or classes listed in subdivisions (1), (2), (3) and (4) under the circumstances contained therein" and that "[s]ignificantly, all of the subdivisions are separated by the disjunctive conjunction 'or' ". Furthermore, this series of counts charge the defendant was both an "official of Local 755" and a "representative of the employees" employed by United and by United's member employers. Amended § 186(a) delineates four distinct courses of conduct each of which is declared unlawful and constitutes an offense when engaged in by any of the specific classes against whom the section's prohibitions are directed. The prohibitions of § 186(b), as amended, are directed against one who solicits or is the recipient of the conduct proscribed to others by § 186(a). Apart from the possible interpretation that Counts 48 through 74 may be taken to charge the defendant with being the recipient in connection with conduct proscribed to United and its member employers by subsection (3) of § 186(a) it is apparent the defendant is unable to determine from the language of these counts whether he is being charged as a union official with being the recipient with reference to conduct violative of subsection (2), or of subsection (4); or being charged as a representative of employees with being the recipient with reference to conduct violative of subsection (1). It is readily apparent that this series of counts does not apprise the defendant with reasonable certainty of the accusation against him.

It is an elementary principle of criminal pleading that where the definition of an offense employs generic terms it is not sufficient to charge the offense in such generic terms but the indictment must state the species—it must descend to particulars. Russell v. United States, 369 U.S. 749, 765, 82 S.Ct. 1038, 8 L. Ed.2d 240. The basis upon which this principle rests—the necessity that the indictment inform the accused with reasonable certainty of the specific offense with which he is charged—is, in our opinion, equally applicable where the statute, as it here does, proscribes different types of conduct in the disjunctive. In this connection the observation made in Ackley v. United States, 8 Cir.,

200 F. 217, 221, is apposite. It was there stated:

> "To recite that the defendant did the one thing *or* another makes the indictment bad for uncertainty."

It is clear that an indictment which charges the accused, in the disjunctive, with being guilty of one or of another of several offenses, is destitute of the necessary certainty, and is wholly insufficient. It does not give the accused definite notice of the offense charged, and thus enable him to defend himself. And that is the effect of Counts 48 through 74. They fail to specify which of the several offenses embraced in amended § 186 the defendant is accused of committing.

Had Counts 48 through 74 charged the defendant as a "representative of employees" only, the government's argument that such designation serves to identify and confine the offense charged by each of the counts to that of receiving and accepting a payment (or thing of value as to Count 74) which employers and certain others are proscribed from making by subsection (1) of amended § 186(a), would not be without merit. But each of the counts in question also identifies and charges the defendant as "an official of Local 755".[5] Thus, as heretofore pointed out, each count may also be taken as charging the receipt and acceptance of a payment proscribed by either subsection (2) or (4) of § 186 (a). The government's reliance upon United States v. Debrow, 346 U.S. 374, 376, 74 S.Ct. 113, 98 L.Ed. 92, is therefore misplaced. Counts 48 through 74 do not adequately meet the test of sufficiency applied in Debrow. Nor are the Federal Rules of Criminal Procedure, including Rule 7(c), of aid to the government here.

On this phase of the appeal we conclude that the defendant's convictions and sentences on Counts 48 through 74 must be reversed.

We turn to consideration of the sufficiency of the evidence, viewed in the light most favorable to the government, to support the convictions under Counts 2 through 47. A brief résumé of the facts established by pertinent evidence will suffice as a background for consideration of this issue—further appraisal of the merits of defendant's contentions on this issue may be limited to those particular elements or factors with respect to which the defendant asserts the proof is insufficient.

It was stipulated that at all relevant times Local 755 was a labor organization; the defendant during the period involved held positions as an officer of the Local, including that of president; and from January through June of 1958 two members of Local 755 were in the employ of United, one of whom, Ralph J. McLaughlin, was at all times pertinent to the indictment employed by United as its office manager. The record discloses United was utilized by its members to synchronize their deliveries of motion picture film and supplies from various film exchanges to theatres—and from the theatres back to the exchange, to United, or to members for delivery to another theatre, as the case might be. United's members were "route owners"—persons and firms engaged in the motion picture film delivery business. These route owners brought their theatre bookings to United. United saw to it that the proper film was delivered to and returned from the proper theatre at the scheduled time by the route owner or the route owner's driver. When required United had a man to make delivery of anything "short" to the place where needed. Some of the drivers employed by route owners were members of Local 755. The defendant received and accepted 46 payments of money from United during 1958, and one such payment in March of 1959, (the period covered by Counts 2 through 47). The

---

5. The identification of and charge that the defendant was an "official of Local 755" does not affect the validity or sufficiency of Counts 2 through 47. As to those counts it is merely surplusage. § 186(b) prior to its amendment in 1959 proscribed conduct of a "representative of employees" only.

payments were made by checks delivered to the defendant. For the most part they were in the same or similar amount and reflected deductions for income tax withholdings, social security contributions and hospitalization insurance.

The record clearly demonstrates that the member route owners utilized United as their agent in carrying out an essential feature and integral part of the business in which each of the route owners was engaged. United synchronized and facilitated the deliveries its members undertook to make for the purpose of assuring that such deliveries were made in accordance with the schedule the members were to meet. This agency on behalf of the employer-members, and the fact that United itself was also an employer of members of Local 755, brought United within the purview of § 186(b)[6] as an employer from whom a representative of the employees of United and its member route owners was prohibited from receiving or accepting any money or thing of value. We perceive no merit to the defendant's contentions that the agency requisite to effect such a result must be an agency for the purpose of labor-management relations matters, such as negotiating or executing collective bargaining agreements, and that the defendant was not a representative of employees because it was not expressly shown that he had authority to act in collective bargaining matters. The intent and purpose of the statutory prohibitions here involved would be frustrated by such a narrow construction of the statute. For the purpose of this particular section of the statute we perceive no basis for so restricting the scope of the terms "agent" and "representative". Normally, a labor organization acts only through its officers—and certainly one holding the office of president of such an organization must be regarded to have some authority to act for employee-members of the labor organization in dealings with their employers. Such a conclusion, we believe, comports with the rationale of United States v. Ryan, 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335, and Brennan v. United States, 8 Cir., 240 F.2d 253.

During the period covered by Counts 2 through 47 it was provided under paragraph (c) of § 186 that the prohibitions of the section:

"* * * shall not be applicable (1) with respect to any money or other thing of value payable by an employer to any representative who is an employee or former employee of such employer, as compensation for, or by reason of, his services as an employee of such employer; * * *."

The jury was properly instructed with respect to the effect of this exception and as to the government's burden of proof where evidence is produced which tends to show employment in such exempt status. Defendant points out that the notations made by United in the normal and ordinary course of its business indicating deductions for tax and insurance purposes in connection with the payments to the defendant was evidence tending to establish an employment relationship between defendant and United which afforded him an exempt status under the exception contained in the statute; asserts there is supporting evidence of such a relationship in testimony concerning the defendant's activities; and contends the government did not overcome the application of the exception by proof establishing beyond a reasonable doubt the non-existence of an employment relationship. The government concedes the general proposition that once competent evidence has been produced which tends to bring a defendant within the exception it then becomes incumbent upon the prosecution to negative the applicability of such exception beyond a reasonable doubt. It points to the testimony of route owners and of United's office manager, McLaughlin, as negating the performance of any services by the defendant for United.

---

6. This reference to § 186, and those that follow, are to the Section as it existed prior to the 1959 amendment.

The evidence on this factual issue, viewed in the light most favorable to the government, warranted a conclusion by the jury that no employment relationship between the defendant and United was involved and that the payments involved were not, as defendant contends, salary or compensation for services rendered by the defendant; that in fact, Donovan, performed no services for United. The question was a factual one for resolution by the jury. We do not on review weigh the credibility of the witnesses. Moreover, the testimony upon which defendant relies is either hearsay, shown to be based on unfounded assumption, or otherwise lacking in probative value on the issue as to whether Donovan performed any services for United. Crediting the testimony favorable to the government, the jury was warranted in concluding that no *bona fide* employment relationship existed.

■ The defendant argues that the receipt of the monies charged in Counts 2 through 47 of the indictment constitutes but one offense—not separate violations of the statute. In United States v. Keegan, 7 Cir., 331 F.2d 257, 260, this Court speaking through Chief Judge Hastings, held that § 186(b) was not merely directed against a course of conduct but prohibited receipt of each payment received in violation of its provisions. We there endorsed the rationale of United States v. Alaimo, 3 Cir., 297 F.2d 604, and treated it as dispositive of such issue. Our holding in Keegan is controlling here. Moreover, there is nothing in the evidence to support the conclusion defendant urges upon us. There is nothing to indicate, much less establish, that the numerous payments during the fifteen months involved were but parts of one transaction, installments of a pre-arranged amount, or the result of a single impulse. There were individual receipts of money from United over many months, and each time the defendant received and accepted a check he was doing that which the statute forbade.

■ The defendant complains of two instructions given by the trial court.

One relates to the "engaged in an industry affecting commerce" factor of the offense proscribed by the statute. The other concerns the "willfully violates" element requisite to establish the offense charged. The first mentioned instruction is substantially identical with that specifically approved by this Court in United States v. Gibas, 7 Cir., 300 F.2d 836, 839. The second is identical with that approved in United States v. Keegan, supra, 331 F.2d pp. 261–262. There was no error in the instructions so given —and as the subjects were covered by proper instructions it was not error to refuse those tendered by the defendant on the same subjects. It is unnecessary that we discuss them. Likewise, we are unpersuaded by defendant's argument that the government failed to prove a "willful violation" by the defendant.

■ The scope and content of the re-direct examination of government witness McLaughlin was not, as defendant contends, improper under the circumstances presented. It was within the bounds of legitimate re-direct examination to clarify statements elicited from the witness on cross-examination—to show that the answers the witness gave were based on hearsay or unfounded assumption. Although a colloquy in the presence of the jury and the form of some of the prosecutor's questions betrayed his unfavorable attitude toward and displeasure with the witness we find in the incidents involved nothing reaching the proportion of prejudicial error requiring reversal. And, the same observation is equally applicable to the defendant's claim of misconduct of the prosecutor in the course of his summation to the jury. Moreover, defendant neither interposed an objection to the statement chiefly complained of, that the president of United was not called as a witness "because he never witnessed Donovan's doing anything [for United]", nor moved for a mistrial on account thereof. While the statement was improper it was not regarded of such import at the time as to elicit an objection from defense counsel—which, no doubt, would have prompted an instruc-

tion by the court that the jury disregard the comment. Nor did it so impress the able and experienced trial judge as to provoke an unsolicited instruction. Defendant is not in a position now to complain of this alleged error. Cf. United States v. Wright, 7 Cir., 309 F.2d 735, 738; Gerard v. United States, 7 Cir., 61 F.2d 872, 875.

We are not persuaded by the contentions of the defendant relating to the issues we have discussed in connection with the convictions under Counts 2 through 47, and although we have considered the additional and subsidiary arguments defendant advances, and the authorities cited and relied upon in connection therewith, we are of the view that none of them merit that we extend this opinion to discuss them.

The judgment order of the District Court is affirmed as to the convictions and sentences on Counts 2 through 47 of the indictment but reversed as to the convictions and sentences on Counts 48 through 74, and the cause is remanded to the District Court with instructions to vacate the sentences imposed on the defendant, Edward J. Donovan, under Counts 48 through 74 of the indictment.

Affirmed in part, reversed in part, and remanded with directions.